909 F.2d 213
 134 L.R.R.M. (BNA) 3039, 116 Lab.Cas. P 10,258
 AIR WISCONSIN PILOTS PROTECTION COMMITTEE, James M. Fenske,
Gary M. Pelach, Richard J. Magiera, and Thomas K.
Bly, Plaintiffs-Appellants,
v.
Clifford R. SANDERSON, Trustee and Acting Chairman of Air
Wisconsin Master Executive Council, et al.,
Defendants-Appellees.
 No. 89-3350.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 14, 1990.
Decided July 30, 1990.
 
 Harvey M. Silets, Susan W. Brenner, Silets & Martin, Chicago, Ill., Arthur M. Wisehart, Steven Lim, Wisehart & Koch, New York City, for plaintiffs-appellants.
 Irving M. Friedman, Michael B. Erp, Katz, Friedman, Schur & Eagle, Chicago, Ill., Robert S. Savelson, Peter Herman, Cohen, Weiss & Simon, New York City, Thomas J. Kassin, Michael H. Campbell, Ford & Harrison, Atlanta, Ga., for defendants-appellees.
 Before POSNER, FLAUM and KANNE, Circuit Judges.
 POSNER, Circuit Judge.
 
 
 1
 Two officers of the Air Wisconsin Master Executive Council, a subordinate body of the Air Line Pilots Association, International ("ALPA"), together with two other Air Wisconsin pilots and an association that these four men have formed called the Air Wisconsin Pilots Protection Committee, have sued ALPA, and several individuals who are agents of ALPA, charging violations of the Railway Labor and Landrum-Griffin Acts. The individual defendants are trustees whom ALPA appointed to wrest control of the Air Wisconsin Master Executive Council from the plaintiffs. The district judge granted the defendants' motion for summary judgment and dismissed the suit.
 
 
 2
 The facts are not in dispute. In 1985 Air Wisconsin acquired by merger Mississippi Valley Airlines, a slightly smaller but basically similar airline. ALPA represented the pilots of both airlines in collective bargaining under the Railway Labor Act (which applies to airlines as well as to railroads), and each group of pilots had seniority rights based on the length of their service with their respective airline. The merger of the airlines required merger of the seniority lists. ALPA had previously issued a policy statement to govern the merger of seniority lists of pilots whom it represents. The statement directs each group of pilots to choose two representatives to negotiate the merger of the lists, and if the negotiations break down, as they did here, the dispute is to be submitted to a board of arbitrators whose award "shall be final and binding on all parties to the arbitration and shall be defended by ALPA."
 
 
 3
 Air Wisconsin's pilots wanted the seniority lists merged on the basis purely of length of service: the pilot hired earliest by either airline would have the greatest seniority in the post-merger Air Wisconsin, the next pilot to be hired by either airline would have the second greatest seniority, and so on down the line. Mississippi Valley's pilots wanted credit for the fact that, before the merger, their airline had been growing more rapidly than Air Wisconsin. The arbitrators split the difference. Their award, set forth in a lengthy document rich in a jargon unfamiliar to us, gave Mississippi Valley's pilots greater seniority than they would have obtained if only length of service had been considered, but less than they had asked for. Some, and probably a majority, of the pilots of the pre-merger Air Wisconsin were unhappy with the award, but none attempted to challenge it in court. Instead, some of them tried to replace ALPA as the collective bargaining representative of Air Wisconsin's pilots with a newly created union, since ALPA was committed by its policy statement to defending the arbitration award. In 1986 the National Mediation Board conducted an election pursuant to the Railway Labor Act to determine whether ALPA or the new union would represent Air Wisconsin's pilots for collective bargaining purposes. A majority of the pilots, presumably composed of a small minority of the pre-merger Air Wisconsin pilots plus an overwhelming majority of the former Mississippi Valley Airlines pilots, voted to retain ALPA.
 
 
 4
 Undaunted by this defeat, the disgruntled Air Wisconsin pilots decided to change the locus of their struggle to the Air Wisconsin Master Executive Council. ALPA does not have locals, but at each airline that it represents there is a committee, called the Master Executive Council, elected by the pilots of that airline. These committees are subordinate bodies of ALPA. Their powers are defined in ALPA's constitution and by-laws, and are various; for example, a proposal to call a strike may not be submitted to an airline's pilots unless first approved by the Master Executive Council for the airline. But their powers do not include the power to act as collective bargaining representative--ALPA itself is the bargaining representative of the pilots employed by ALPA-organized airlines. And the councils are forbidden to "initiate any action that is inconsistent with the Constitution and By-Laws or with the best interests of the Association or the general membership."
 
 
 5
 Unheeding of this prohibition the Air Wisconsin Master Executive Council, dominated by pilots of the pre-merger Air Wisconsin, sent a letter to all Air Wisconsin pilots enclosing a proposal to replace the merged seniority list created by the arbitration award with a list based on length of service--just as the representatives of the Air Wisconsin's pilots before the merger had proposed to the arbitrators--plus a secret ballot to be used to vote for or against the proposal. The cover letter stated that the proposal would "pass" if a majority of the ballots "ratified" it. Upon learning of this and related acts of defiance, ALPA placed the Master Executive Council in trusteeship. The suit claims that by thus squelching the Council's attempt to reopen the issue of seniority, ALPA violated its duty (imposed on collective bargaining representatives by interpretation of the Railway Labor Act) to represent Air Wisconsin's original pilots fairly; violated ALPA's constitution, by-laws, and policy statements; and violated the provisions of the Landrum-Griffin Act that govern trusteeships and that guarantee union members the right to vote and the right of free speech.
 
 
 6
 The suit was brought in 1987, and in 1989 the plaintiffs again failed in their effort to decertify ALPA as the collective bargaining representative of Air Wisconsin's pilots. They thus have struck out not only before the arbitrators but twice in the electoral marketplace. They have refused to call it quits and instead, in the characteristic style of modern Americans, have turned to the courts.
 
 
 7
 A union empowered by federal law to be the exclusive representative of a group of workers for purposes of bargaining with their employer over wages and over terms and conditions of employment has a correlative duty, fiduciary in character, to represent all members of the group fairly, that is, without favoritism, prejudice, or other discrimination. Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). ALPA satisfied that duty in this case, however, by establishing, long before the case arose, a fair process for determining seniority in an airline resulting from a merger. Representatives of the affected workers negotiate, and if they are unable to come to terms the matter is referred to arbitration. The plaintiffs disagree violently with the result of the arbitration in this case but have not pointed to any features of the process--whether the method of selecting the arbitrators, or their background, or the procedures they employed--as being unfair. More important, ALPA's belief that such arbitrations should be final and binding and its corollary that ALPA shall be obligated to defend them would not have prevented the pilots from challenging the arbitration award in court, if the award were infected by fraud or by a serious conflict of interest or were inconsistent with the terms of reference to arbitration. Brotherhood of Locomotive Engineers v. Atchison, Topeka & Santa Fe Ry., 768 F.2d 914, 921 (7th Cir.1985); Dreis & Krump Mfg. Co. v. International Ass'n of Machinists & Aerospace Workers, 802 F.2d 247, 253 (7th Cir.1986). (But they mounted no challenge.) ALPA's policy signifies only that if the award is valid, it is definitive so far as ALPA is concerned. The reason for the policy is not hard to see. If ALPA were free to ignore the merged seniority list, the employees of the post-merger airline would have very little job security; as a concomitant, disputes over seniority would fester--as they have done in this case, in which the plaintiffs are indirectly challenging the finality of the merged seniority list.
 
 
 8
 The system that ALPA has created for determining seniority in a merged work force is not biased in favor of one group of workers or prejudiced against another. It was as likely to yield an award in favor of Air Wisconsin's pilots as in favor of Mississippi Valley's. It is fair, and nothing more is required to comply with the duty of fair representation, since "so long as the union does not intentionally harm a member or class of members, it will be deemed to have represented its members fairly." Olsen v. United Parcel Service, 892 F.2d 1290, 1294 (7th Cir.1990). That the system ALPA has created places a good deal of power in the hand of arbitrators is not a sign of "unfairness" in the limited sense relevant to evaluating claims of breach of the duty of fair representation, especially since the alternative would be to encourage continuing and acrimonious disputes among workers by opening seniority to continual revision. It is not in the interest of organized labor to incite workers to fight among themselves over job rights. Nor is it in the workers' own interest, behind the veil of ignorance, that is, before they know whether they have been the winner or loser of the arbitration. Here as elsewhere finality serves important social purposes and we certainly cannot pronounce ALPA unfair for giving the arbitrators' determination of seniority as much finality as it has done.
 
 
 9
 The plaintiffs argue with great vigor that since it is a violation of the duty of fair representation to discriminate against a minority, Steele v. Louisville & Nashville R.R., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), it is all the more certainly a violation to discriminate against a majority; the pilots employed by Air Wisconsin before the merger constituted a majority of the pilots of the airline resulting from the merger, and therefore their preference in the matter of seniority should have been honored. With respect, this is a very poor argument. Minority rights imply a limitation on the rights of the majority; hence the latter rights cannot be derived from the former, as the plaintiffs would have us do. What is more, it was the arbitrators, not ALPA, that overrode majority preferences. The system whereby disputes over seniority are referred to arbitration is not slanted against majority preferences except insofar as any method of dispute resolution other than majority vote of the disputants may be said to be slanted against such preferences. And it is indeed the system for resolving such disputes that the plaintiffs are attacking, or at least should be attacking. If the system is fine and only the specific arbitration award is improper, the plaintiffs are in the wrong forum. They should have challenged the award in court when it was rendered, as in Beardsly v. Chicago & North Western Transportation Co., 850 F.2d 1255, 1270-71 (8th Cir.1988). As we shall see, such a challenge is now time barred.
 
 
 10
 It cannot be said too often that the judicial remedies available to employees unhappy with their collective bargaining representative are highly limited. Antrim v. Burlington Northern, Inc., 847 F.2d 375, 378 (7th Cir.1988); Dober v. Roadway Express, Inc., 707 F.2d 292, 294 (7th Cir.1983). If the employees don't like the union that represents them, they can vote it out, id. at 295, as in fact the plaintiffs in this case have twice tried to do. Majority preferences are secured in this as in many cases by the franchise, Le'Mon v. NLRB, 902 F.2d 810, 814 (10th Cir.1990); Gorski v. Local Union 134, 636 F.Supp. 1174, 1181 (N.D.Ill.1986), making all the more perverse the plaintiffs' argument that courts should be quicker to intervene to protect majorities than to protect minorities and inclining us to agree with those courts that have held that the duty of fair representation does not run to the majority. Le'Mon v. NLRB, supra, 902 F.2d at 814-15; NLRB v. Local 299, 782 F.2d 46, 50-52 (6th Cir.1986).
 
 
 11
 We do not wish to sound starry-eyed about democracy. We realize that majority rule is not always efficacious and that majority preferences sometimes, perhaps often, are thwarted by the machinations of interest groups; and these and other systemic problems with aggregating preferences by voting are not touched by the efforts of the Landrum-Griffin Act, of which more later, to democratize union governance. But in general, and so far as we know also in the specific setting of collective bargaining representation in the airline industry, a majority is better protected by the electoral process than a minority is. It is therefore the minority that has the more legitimate fear concerning the behavior of the collective bargaining representative. That is why the legal duty of fair representation is oriented toward the concerns of minorities, whether a racial minority systematically discriminated against by the union or a group of dissidents on the outs with the union leadership whom the leadership seeks to punish or an individual worker with a grievance against the company whom the union deliberately and unjustifiably refuses to assist. This case has no flavor of any of these systematic failures of representation. The plaintiffs are unable to explain why, if ALPA is oppressing a majority of Air Wisconsin's pilots, the pilots have twice failed to vote ALPA out as their representative for collective bargaining.
 
 
 12
 We need not decide whether, if the plaintiffs and their allies ever succeed in ousting ALPA in favor of a union not pledged to defend the arbitrators' award, the matter of seniority can be reopened in collective bargaining negotiations with the airline, or otherwise revisited. The plaintiffs say the award became a provision of the collective bargaining agreement and expired when that agreement expired. We leave aside the merit of this contention beyond noting that an attempt by a majority of the employees in a collective bargaining unit to gang up against a minority of employees in the fashion apparently envisaged by the plaintiffs could itself be thought a violation of the duty of fair representation by the union that the majority used as its tool. Alvey v. General Electric Co., 622 F.2d 1279, 1289-90 (7th Cir.1980).
 
 
 13
 The plaintiffs' further claim that ALPA has violated its constitution, plus other enactments that give the members contractual entitlements, need not detain us too long. It is true that the constitution sets as a goal for ALPA the adoption of uniform principles of seniority, but this is preamble-like language in a document intended to set forth general principles rather than exact guidelines--a document that does not mention airline mergers at all. The language in question could not have been intended to bar ALPA from using arbitrators to determine seniority in merger situations and giving their determinations finality, especially when elsewhere the constitution empowers ALPA's executive board to interpret the constitution and (what is pretty much the same thing) establish policy for the union. It is true that the policy statement to which we referred earlier states that the "seniority of a pilot shall be based upon the length of service as a pilot with the Company," but this too is "preambular" language and does not appear in the section of the policy statement concerned with the merger of seniority lists when companies merge. The statement's arbitration provision governs there, and it implies that the arbitrators should consider such factors as type of equipment and route structure, along with date of hire and length of service. The directive concerning seniority within each company is intended, as the policy statement elsewhere makes clear, to facilitate the merger of seniority lists by preventing a situation from arising in which as a result of an airline merger a pilot of one of the pre-merger airlines might jump ahead of another pilot of the same airline in seniority. It is not intended to dictate the terms on which the lists shall be merged.
 
 
 14
 Despite what we have just said, there might be enough ambiguity in the documents to create a triable issue concerning ALPA's obligations to the employees of the post-merger airline but for two further considerations, each dispositive. The first is the principle that a union's interpretation of its own constitution, by-laws, and other promulgations is entitled to judicial deference; we must be able to call the interpretation unreasonable, perhaps even "patently unreasonable," before we can set it aside. Local Union No. 657 v. Sidell, 552 F.2d 1250, 1257 (7th Cir.1977); Millwright Local No. 1079 v. United Brotherhood of Carpenters & Joiners, 878 F.2d 960, 962 (6th Cir.1989); Loretangeli v. Critelli, 853 F.2d 186, 192 (3d Cir.1988); Newell v. International Brotherhood of Electrical Workers, 789 F.2d 1186, 1189 (5th Cir.1986). The reason is to protect the internal affairs of unions from heavy-handed judicial interference, and is consistent with what has become in the last half century a settled though not total aversion to federal judicial intervention in labor relations. Gustafson v. American Train Dispatchers' Ass'n, 788 F.2d 1284, 1287 (7th Cir.1986). There is no way in which ALPA's interpretation of the provisions bearing on the merger of seniority lists could be thought unreasonable.
 
 
 15
 Second, if the plaintiffs thought the arbitration award invalid because rendered in violation of the union's constitution and merger policy statement, the way to raise the point was to challenge the award in court, which they had six months to do. United Independent Flight Officers, Inc. v. United Air Lines, Inc., 756 F.2d 1262, 1269-73 (7th Cir.1985). They have mounted a collateral attack on the award without even trying to bring themselves within the narrow limits of the rules that permit such attacks.
 
 
 16
 On both counts they are barred from making breach of contract arguments that seem in any event to have no merit. We move therefore to the Landrum-Griffin issues, where again we can be brief. ALPA destroyed such independence as the Air Wisconsin Master Executive Council may have had by placing it in a trusteeship controlled by ALPA. 29 U.S.C. Sec. 462; International Brotherhood of Boilermakers v. Local Lodge 714, 845 F.2d 687 (7th Cir.1988). It did this because the council's officers had expressed their disagreement with ALPA's policy of defending the finality of arbitration awards that establish merged seniority lists and had acted on their disagreement by mailing to Air Wisconsin's pilots a proposal to cancel the award, together with a ballot for voting on the proposal. The creation of the trusteeship may seem, therefore, an act of retaliation for the exercise of the right of free speech. That right, however, insofar as it is sought to be asserted against a private entity such as ALPA, derives not from the First Amendment (a limitation on governmental, not private, action) but from the Landrum-Griffin Act itself, which confers on union members a right of free speech but subordinates it to "reasonable [union] rules as to the responsibility of every member toward the [union] as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations." 29 U.S.C. Sec. 411(a)(2); see United Steelworkers of America v. Sadlowski, 457 U.S. 102, 111, 121 n. 16, 102 S.Ct. 2339, 2345, 2346 n. 16, 72 L.Ed.2d 707 (1982).
 
 
 17
 The quoted language might have been written with these plaintiffs in mind. They used their positions as officers of the Air Wisconsin Master Executive Council to interfere with ALPA's performance of its duty of collective bargaining on behalf of the airline's pilots and to undermine ALPA's contractual commitment (made in the policy statement on mergers) to defend the arbitrators' award. The Council is not the collective bargaining representative and has no authority either to adopt or even to bargain for the adoption of a new seniority list. The plaintiffs are free to express their views, as vociferously as they care to do, concerning the seniority list, without thereby forfeiting positions to which they have been elected, Sheet Metal Workers' Int'l Ass'n v. Lynn, 488 U.S. 347, 109 S.Ct. 639, 102 L.Ed.2d 700 (1989); but they are not entitled to continue to exercise a trust that they have abused. In asking Air Wisconsin's pilots to vote on a matter confided to another body (ALPA), the plaintiffs used their offices to subvert the policies and commitments of the union, and by thus undermining the union by deed and not just by word they passed out of the protective field of Landrum-Griffin's free-speech clause even as broadly defined in Lynn.
 
 
 18
 What we have said answers the remaining contentions, that the trusteeship was imposed for an improper, retaliatory purpose and that it abridged the union members' right to vote. Collective bargaining under the Railway Labor Act and the other federal labor statutes illustrates representative rather than participatory democracy. The union conducts the negotiations. The workers vote on whether to be represented and by which union, and on whether to ratify the agreement negotiated by their representative, and on other proposals by the representative such as a strike call; but once an agreement is in force they have no right to change it until it expires. This is another example of intelligent finality. The agreement has a term of years (normally three) and during that time the workers are bound by it.
 
 
 19
 The plaintiffs make some other contentions, concerning procedural details of the trusteeship, but they have no possible merit so we pass them by in silence. The judgment of the district court dismissing the suit was correct, and is
 
 
 20
 AFFIRMED.