964 F.2d 818
 140 L.R.R.M. (BNA) 2440, 121 Lab.Cas. P 10,182,
122 Lab.Cas. P 10,305, 7 IER Cases 1054
 Donald J. ALLEN; Paul R. Bacon; Gustav G. Blumenberg;
Gerald E. Brown; Norman L. Chapman; William A. Cockrill;
J.D. Dunbar; Dennis J. Edwards; Steven A. Foppe; Robert
L. Gorman; Noel W. Hicks; Lonnie J. Hileman; Robin
Hooker; William H. Hopper; Ronald A. Jackson; Gerald W.
Jones; H.M. Mann; Jerry L. Miller; Clifford A. Morgan;
Rodney L. Murch; Sylvester Porter; J.C. Rawlings; R.K.
Rhodes; R.R. Rose; James C. Salman; Stacy H. Scott;
Clifford N. Snow; Michael R. Snow; Donald E. Stein;
Russell C. Stevens; James T. Strange, Jr.; Clarence Tabor;
Stephen W. Van Hook; John B. Van Winkle; Garry D.
Weatherly; David L. Whalen; William E. White; James E.
Wiggs; Robert H. Wineinger, Appellants,
v.
UNITED TRANSPORTATION UNION; National Railroad Passenger
Corporation (Amtrak), Appellees.
 No. 91-1901.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 11, 1991.
Decided May 20, 1992.
Rehearing and Rehearing En Banc
Denied June 29, 1992.
 
 S. Sheldon Weinhaus, St. Louis, Mo., argued, for appellants.
 Clinton J. Miller, III, Cleveland, Ohio, argued (Clinton J. Miller, III, on the brief), for appellee United Transp. Union.
 Jonathan I. Saperstein, Washington, D.C. and Larry M. Bauer of St. Louis, Mo., on the brief, for appellee National Railroad Passenger Corp.
 Before FAGG, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOODS,* District Judge.
 FAGG, Circuit Judge.
 
 
 1
 The appellants in this case, employees of the National Railroad Passenger Corp. (Amtrak), brought this action against Amtrak and the United Transportation Union (the union) asserting a number of claims relating to the appellants' seniority rights under a collective bargaining agreement (CBA) that Amtrak and the union negotiated. The appellants appeal from the district court's grant of summary judgment to Amtrak and the union. We affirm.
 
 
 2
 This lawsuit arose out of Amtrak's decision to employ its own train and engine crews, rather than contract for those services from other railroads as it had done since its inception in 1970. Although it was not obligated to do so, Amtrak wished to hire the same train and engine crews that had been working on contract from the other railroads. To facilitate the hiring process Amtrak contacted the union, which represented the train and engine crew employees in their employment with the railroads. The union advised Amtrak that two union vice presidents were authorized to negotiate a CBA.
 
 
 3
 Because the train and engine crews consisted of employees working for several different railroads, the CBA included an agreement on how seniority rights would be calculated once members of the train and engine crews became Amtrak employees. The union and Amtrak agreed to use a "work equity allocation" method, under which seniority would be based essentially on the number of miles and frequency of service the train and engine crew employees had worked on Amtrak routes while on contract from the various railroads. Using this method resulted in some train and engine crew employees who worked on busy Amtrak routes receiving greater seniority than other train and engine crew employees with more years of service at their respective railroads.
 
 
 4
 The appellants contend the district court committed error in granting Amtrak and the union summary judgment on their claim that Amtrak and the union colluded to violate the union's duty of fair representation. The appellants assert the two union vice presidents did not have authority under the union's constitution to negotiate the CBA, and the union breached its duty of fair representation by agreeing to the work equity allocation method of calculating seniority rights rather than a straight date-of-hire method. In granting Amtrak and the union summary judgment, the district court concluded the union constitution allowed the vice presidents to negotiate the CBA and found the appellants failed to submit evidence showing "that the [union] did not fairly consider the [appellants'] seniority interests ... before it executed the CBA."
 
 
 5
 We review the district court's grant of summary judgment de novo and will affirm only if the record, viewed in the light most favorable to the appellants, shows there is no genuine issue of material fact and Amtrak and the union are entitled to judgment as a matter of law. United States ex rel. Glass v. Medtronic, Inc., 957 F.2d 605, 607 (8th Cir.1992). To prevail on their unfair representation claim, the appellants had the burden of coming forward with evidence showing the union breached its "obligation to serve the interests of all [union] members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). Judicial review of a union's performance is limited, however, and it is not enough to show the CBA adversely affected the appellants compared to other employees. See Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953). "Any substantive examination of a union's performance ... must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." Air Line Pilots Ass'n, Int'l v. O'Neill, --- U.S. ----, 111 S.Ct. 1127, 1135, 113 L.Ed.2d 51 (1991). Thus, the appellants had to come forward with evidence tending to show the union's representation fell "so far outside a 'wide range of reasonableness' that it [was] wholly 'irrational' or 'arbitrary.' " Id. at 1136 (quoting Huffman, 345 U.S. at 338, 73 S.Ct. at 686). Applying these principles to the summary judgment record, we conclude the district court properly granted Amtrak and the union summary judgment on the appellants' unfair representation claim.
 
 
 6
 As a threshold matter, the appellants assert the vice presidents did not have authority under the union constitution to negotiate the CBA with Amtrak. On the other hand, the union asserts the international union president had the constitutional power to give the vice presidents that authority. Absent bad faith, we will defer to the union's interpretation of its own constitution, provided that interpretation is reasonable and not contrary to the constitution's express language. O'Neill v. Air Line Pilots Ass'n, 939 F.2d 1199, 1206-07 (5th Cir.1991); Washington v. Laborer's Int'l Union, 792 F.2d 94, 95-96 (8th Cir.1985) (per curiam); Stelling v. International Bhd. of Elec. Workers Local 1547, 587 F.2d 1379, 1387-89 (9th Cir.1978), cert. denied, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979). As we read it, the union constitution "is a flexible instrument that ... entrusts to the president plenary authority to do whatever is necessary to protect the interests of the membership." Famulare v. United Transp. Union Int'l, 639 F.Supp. 965, 969 (S.D.N.Y.1986) (interpreting the United Transportation Union's constitution in an unfair representation case arising out of the same CBA). Thus, the union's interpretation of its constitution is reasonable and is entitled to our deference. This being the case, the district court properly concluded the two union vice presidents had the authority to negotiate a binding CBA with Amtrak.
 
 
 7
 The appellants nevertheless contend the union breached its duty of fair representation by agreeing to the work equity allocation method of determining seniority rights. The appellants received less seniority under this method than they would have received had seniority been based on a straight date-of-hire method. To make out a prima facie showing of unfair representation, however, it is not enough to show the seniority system selected favors one group of employees over another. See Ratkosky v. United Transp. Union, 843 F.2d 869, 876 (6th Cir.1988). Indeed, when "establishing seniority systems, there are a variety of legitimate options, and the courts [must be] careful not to substitute their judgments for those of the authorized labor organization." Id. The work equity allocation method is plainly a legitimate and sensible means of determining seniority rights, see Augspurger v. Brotherhood of Locomotive Eng'rs, 510 F.2d 853, 859 (8th Cir.1975), and as the district court noted, the appellants have failed to present any evidence showing the union acted in bad faith or with a discriminatory intent when negotiating the CBA. We thus conclude the district court properly granted Amtrak and the union summary judgment on the appellants' unfair representation claim.
 
 
 8
 The appellants also contend the district court committed error in dismissing their misrepresentation claim against Amtrak and the union. The district court concluded the appellants' misrepresentation claim required an interpretation of the CBA and, thus, was preempted by the Railway Labor Act (RLA), 45 U.S.C. §§ 151-188 (1988). See Deford v. Soo Line R.R., 867 F.2d 1080, 1085 (8th Cir.), cert. denied, 492 U.S. 927, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989). On appeal, the appellants assert Amtrak and the union made false and misleading statements about the appellants' seniority rights to induce the appellants into accepting train and engine crew positions with Amtrak. The appellants contend their misrepresentation claim is based solely on these statements, does not implicate the terms of the CBA, and is not preempted by the RLA. We disagree.
 
 
 9
 The appellants fail to cite any controlling authority to support their misrepresentation claim, and it is apparent to us the resolution of the claim would entail a review and interpretation of the CBA. To prevail on their misrepresentation claim, the appellants must show that Amtrak and the union made false representations about the CBA's seniority provisions. Melanson v. United Air Lines, Inc., 931 F.2d 558, 562 (9th Cir.), cert. denied, ---- U.S. ---, 112 S.Ct. 189, 116 L.Ed.2d 150 (1991). In order to prove the falsity of the representations, the appellants would have to show "the relevant provisions of the CBA differ significantly from those representations. This showing requires reference to and interpretation of the terms of the CBA. Resolution of this misrepresentation claim, then, depends on an analysis of the CBA, and ... is at least 'arguably governed' by the CBA." Id. at 563. Because the appellants' misrepresentation claim requires an interpretation of the CBA, we conclude the district court properly dismissed the claim as preempted by the RLA. Deford, 867 F.2d at 1085.
 
 
 10
 We have considered the appellants' remaining contentions on appeal and conclude they are without merit. We thus affirm the district court's grant of summary judgment to Amtrak and the union.
 
 
 
 *
 The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation