Lee **RAKESTRAW**, et al., Plaintiffs–
Appellees, Cross–Appellants,

v.

**UNITED AIRLINES, INC.,**
Defendant–Appellee,

v.

**AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL,** Defendant–
Appellant, Cross–Appellee.

David A. **HAMMOND**, et al.,
Plaintiffs–Appellants,

v.

**AIR LINE PILOTS ASSOCIATION**
and Trans World Airlines, Inc.,
Defendants–Appellees.

Nos. 91–2285, 91–2416, 91–2417, 91–2502,
91–2503, 91–2535 and 91–2957.

United States Court of Appeals,
Seventh Circuit.

April 6, 1993.

Thomas R. Meites, Michael M. Mulder (argued), Paul W. Mollica, Laurie A. Wardell, Meites, Frackman, Mulder & Burger, Chicago, IL, Walter H. Fleischer, Washington, DC, for plaintiffs-appellants.

Eugene J. Schiltz, Kenneth Philip Ross, Robert F. Coleman (argued), Coleman & Associates, Chicago, IL, Jon G. Carlson, Jeff Ezra, Carlson & Associates, Edwardsville, IL, for David A. Hammond, Terry D. Atkins, Kenneth N. Baldwin, Gregory N.

Dohrn, K. Richard Kloeppel, and H.M. Smith.

Michael B. Erp, Katz, Friedman, Schur & Eagle, Chicago, IL, Michael E. Abram (argued), Stephen Presser, Peter Herman, Tamir W. Rosenblum, Joseph J. Vitale, Cohen, Weiss & Simon, New York City, for Air Line Pilots Ass'n, Intern. in Nos. 91–2416, 91–2502 and 91–2535.

Duane M. Kelley, Robert W. Tarun, Winston & Strawn, Chicago, IL, Michael E. Abram, Cohen, Weiss & Simon, New York City, Robert A. Siegel (argued), Victoria D. Stratman, Tom A. Jerman, O'Melveny & Myers, Los Angeles, CA, for United Air Lines.

Thomas J. Piskorski (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Michael A. Katz, Trans World Airlines, Legal Dept., Mt. Kisco, NY, for Trans World Airlines, Inc.

Irving M. Friedman, Michael B. Erp, Stanley Eisenstein, Katz, Friedman, Schur & Eagle, Chicago, IL, Stephen B. Moldof (argued), Michael L. Winston, Cohen, Weiss & Simon, New York City, for Air Line Pilots Association, Intern. in No. 91–2957.

Before BAUER, Chief Judge, and CUMMINGS and EASTERBROOK, Circuit Judges.

## ON PETITIONS FOR REHEARING

Petitions for rehearing were filed by the plaintiffs in each of these two consolidated cases. All of the judges on the panel voted to deny rehearing, and the petitions are accordingly denied.

A judge in active service called for a vote on the suggestions of rehearing in banc, which failed to obtain a majority. Judges Flaum and Ripple voted for rehearing en banc.

RIPPLE, Circuit Judge, with whom FLAUM, Circuit Judge, joins, dissenting from the denial of rehearing en banc.

The district court held that Air Line Pilots Association ("ALPA") had breached its duty of fair representation ("DFR") in the *Hammond* case, and that it had not breached its DFR in the *Rakestraw* case. On appeal, the panel held that ALPA had not breached its DFR in either case. The plaintiffs in both cases have petitioned for rehearing with suggestion for rehearing en banc. At issue is the standard the panel employed in determining that ALPA had not breached its DFR. Because the panel's analysis deviates from established law of the Supreme Court and this court, and because it places this circuit in conflict with other circuits, the petition for rehearing en banc should be granted.

The panel opinion deviates from the standard that the Supreme Court has established for DFR cases. The standard was originally set out in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). There, the Court found that a breach of DFR "occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190, 87 S.Ct. at 916. The Court recently affirmed that *Vaca's* standard is indeed the proper test for DFR cases: "Although there is admittedly some variation in the way in which our opinions have described the unions' duty of fair representation, we have repeatedly identified three components of the duty ..." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, ——, 111 S.Ct. 1127, 1134, 113 L.Ed.2d 51 (1991). In addition to affirming *Vaca's* three-part standard, the Court clarified that "a union breaches its duty of fair representation if its actions are *either* arbitrary, discriminatory, or in bad faith." *O'Neill*, 499 U.S. at ——, 111 S.Ct. at 1130 (emphasis added). The Court thus characterized the test as a "tripartite standard." *Id.* 499 U.S. at ——, 111 S.Ct. at 1135.

The courts of the various circuits have employed this tripartite test and have recognized that a union's conduct must be evaluated separately under each of its three components. For example, in *Colon Velez v. Puerto Rico Marine Management, Inc.*, the First Circuit noted that a union breaches its DFR "if its actions are *either* arbitrary, discriminatory, or in bad faith." 957 F.2d 933, 940 (1st Cir.1992)

(emphasis added). *Accord Carter v. Local No. 789*, 963 F.2d 1078, 1080 (8th Cir.1992); *Perry v. Million Air*, 943 F.2d 616, 619 (6th Cir.1991). In *Carter*, the court was clear that the three components must be evaluated separately. There, the court stated that the district court erred when it evaluated the union's conduct under a single "reasonableness" test that "blurred the distinction between the 'arbitrary' and 'discriminatory' prongs of the test." *Carter*, 963 F.2d at 1082.

Prior to *Rakestraw* and *Hammond*, we dutifully employed the tripartite test. In *Ooley v. Schwitzer Division, Household Manufacturing, Inc.*, 961 F.2d 1293 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 208, 121 L.Ed.2d 148 (1992), the court cited *O'Neill* and noted that "the standard is a tripartite standard where the courts should look to each component separately rather than merging the test into a single requirement of honesty and good faith." *Ooley*, 961 F.2d at 1302. The court then went on to evaluate the union's behavior in light of each of the three components. In *Bennett v. Local Union No. 66*, 958 F.2d 1429, 1436 (7th Cir.1992), we also recognized that the test was a "tripartite standard."

Despite the court's previous—and recent—adherence to the well-established tripartite standard, the panel in *Rakestraw* and *Hammond* did not apply it. The panel started down the right path by stating that in *Vaca* the "Court concluded that a union breaches its duty of fair representation if its actions are arbitrary, discriminatory, or in bad faith." *Rakestraw v. United Airlines, Inc.*, 981 F.2d 1524, 1530 (7th Cir. 1992). However, the panel quickly left that path and dismissed the standards of the tripartite test as "conclusions—epithets rather than standards of conduct or tools of analysis." *Id.* At no point in the opinion did the panel break down its analysis into an examination of the three discrete parts of the established test. The panel even suggested that *O'Neill* itself did not follow the tripartite test: "Buzzwords such as 'bad faith' and 'arbitrary' being empty, *O'Neill* analogized the union's choice to that of a legislature, subject to the most deferential judicial review." *Rakestraw*, 981 F.2d at 1532. The panel used this deferential standard throughout its analysis. What the panel failed to recognize is that *O'Neill's* analogy related only to the arbitrary prong of the tripartite test. *O'Neill* instructs that "a union's actions are *arbitrary* only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *O'Neill*, 499 U.S. at ——, 111 S.Ct. at 1130 (emphasis added).

All of *O'Neill's* references to deference and "a wide range of reasonableness" relate only to whether the union acted arbitrarily, not whether it acted discriminatorily or in bad faith. Each prong is a separate inquiry. The panel erred in applying this deferential standard across the board. The same error was made by the district court in *Carter*. Reversing the district court, the Eighth Circuit stated, "the district court held that the union's conduct, as a whole, passed the *[O'Neill]* 'wide range of reasonableness' test. In so holding, however, the district court blurred the distinction between the 'arbitrary' and 'discriminatory' prongs of the *[O'Neill]* test. The wide range of reasonableness standard applies only to allegedly *arbitrary* union conduct." *Carter*, 963 F.2d at 1082 (emphasis in original).

In *Ooley*, this court recognized that *O'Neill's* deference only applies to the "arbitrary" prong. The court stated that "a union only violates the arbitrary prong of the analysis when the union's actions are so far outside a wide range of reasonableness ..." *Ooley*, 961 F.2d at 1302. After finding that the union had not acted arbitrarily under this "extremely deferential standard," the court went on to say that "[i]t seems to be a different question, however, whether or not" the union acted discriminatorily or in bad faith. *Id.* at 1303. Also, in *Bennett*, this court recognized the tripartite standard and noted that *O'Neill* held that "a union's actions are *arbitrary* only if they fall outside a 'wide range of reasonableness.'" *Bennett*, 958 F.2d at

1436 (citing *O'Neill*, 499 U.S. at ——, 111 S.Ct. at 1130) (emphasis added).[1]

Rather than using the tripartite standard, the panel in effect boils down the inquiry into a single factor: If the union acted so as to benefit the workers as a whole, then it did not breach its DFR. This is a by-product of the panel's use of a single rationality test. An examination of the opinion shows that it is replete with deference to majority rule. The panel said: "Negotiation means compromise." *Rakestraw*, 981 F.2d at 1529; "Bargaining has winners and losers." *Id.* 981 F.2d at 1530; "the majority is entitled to prevail." *Id.* 981 F.2d at 1531; and "If the union's leaders took account of the fact that the workers at the larger firm preferred this outcome, so what? Majority rule is the norm." *Id.* 981 F.2d at 1533. The panel says:

> [t]here are limits on what labor can do in response to management. Unions may not shoot strikebreakers, and we may assume that they may not negotiate for wage scales in the mirror image of managers' preferred systems.... Beyond these limits, workers may decide by majority vote where their interests lie.

*Id.* 981 F.2d at 1533.

All of this deference ignores that the concept of the duty of fair representation was created to protect minority interests, and by necessity, places a limit on majority rule. In the case that set forth the principle of the DFR under the Railway Labor Act, the Supreme Court said, "the organization chosen to represent a craft is to represent all its members, the majority as well as the minority, and it is to act for and not against those whom it represents." *Steele v. Louisville & Nashville R.R.*, 323 U.S. 192, 202, 65 S.Ct. 226, 232, 89 L.Ed. 173 (1944). As the Second Circuit noted in

*Haerum v. ALPA*, "[t]he objective of the duty of fair representation is to provide substantive and procedural safeguards for minority members of the collective bargaining unit." 892 F.2d 216, 221 (2d Cir.1989) (citing *Jones v. Trans World Airlines, Inc.*, 495 F.2d 790, 798 (2d Cir.1974)).

Indeed, we rejected the idea of rote majority rule in *Air Wisconsin Pilots Protection Committee v. Sanderson*, 909 F.2d 213 (7th Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 958, 112 L.Ed.2d 1045 (1991). We stated that "[m]inority rights imply a limitation on the rights of the majority" and "the legal duty of fair representation is oriented toward the concerns of minorities ... or a group of dissidents on the outs with the union leadership whom the leadership seeks to punish...." *Air Wisconsin*, 909 F.2d at 216, 217. The court has also found that seniority decisions "may not be made solely for the benefit of a stronger, more politically favored group over a minority group." *Barton Brands, Ltd. v. NLRB*, 529 F.2d 793, 798–99 (7th Cir.1976).

The panel's analysis in *Rakestraw* and *Hammond* disregards all of this by deferring so heavily to majority interests. By not employing the tripartite standard, the panel has deviated from the established law of the Supreme Court and the Seventh Circuit, and it has placed this circuit in conflict with other circuits. Every circuit that has faced this issue since *O'Neill* has accepted the tripartite standard and has recognized that *O'Neill's* phrase "outside a wide range of reasonableness" applies only to the arbitrary prong. *See Carter*, 963 F.2d at 1078; *Colon Velez*, 957 F.2d at 940; *Ackley v. Local Union 337*, 948 F.2d 267, 267 (6th Cir.1991); *Perry*, 943 F.2d at 619. The panel's opinion here cannot be

---

1. Even if the "mixed motive" analysis used elsewhere, *cf. Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 1794, 104 L.Ed.2d 268 (1989), can be transferred in wholesale fashion to fair representation cases, the test was never applied by the district court. There is no basis

for the conclusion that, absent an impermissible motive, the union would have followed the same course. As the panel appears to acknowledge in *Hammond* and *Rakestraw*, 981 F.2d at 1534–35, a mixed motive analysis can even be

squared with these cases. I therefore respectfully dissent from the denial of rehearing en banc.[2]

attempted only if one accepts the panel's collapse of the three-part test.

**2.** As Judge Wood pointed out in *Ooley,* this circuit has already been criticized by the Supreme Court for its crabbed interpretation of the duty of fair representation. 961 F.2d at 1302 n. 7 (citing *O'Neill,* 499 U.S. at ——, 111 S.Ct. at 1134).