**William J. MAHER and William Kelly, individually and on behalf of all others similarly situated, Plaintiffs–Appellants,**

v.

**The INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Defendant–Appellee.**

No. 93–1807.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1993.

Decided Feb. 3, 1994.

---

**712**

James B. McCabe, Arlington Heights, IL, William D. Kelly (argued), John C. Voita, Steven C. Prazuch, Schaumburg, IL, for plaintiffs-appellants.

Solomon I. Hirsh (argued), Chicago, IL, Laurence J. Cohen, Sherman, Dunn, Cohen, Lifer & Counts, Washington, DC, for defendant-appellee.

Before POSNER, Chief Judge, CUMMINGS, Circuit Judge, and CRABB, Chief District Judge.*

PER CURIAM.

Plaintiffs William J. Maher and William Kelly, members of Local 134 of the International Brotherhood of Electrical Workers ("Local 134"), individually and on behalf of their similarly-situated brethren, have brought suit against the international union (the "IBEW") alleging violations of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401, *et seq.* (the "LMRDA"), and of the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* (the "NLRA"). We

have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

At issue is plaintiffs' claim that the IBEW violated the LMRDA, 29 U.S.C. § 462, and the NLRA, 29 U.S.C. § 185, by renegotiating, in contravention of the IBEW's constitution, certain of Local 134's collective bargaining agreements while Local 134 was in trusteeship. The court below granted defendant's motion, and denied plaintiffs' cross-motion, for summary judgment on these issues, and plaintiffs appeal. We affirm.

*Background*

In April 1990 the IBEW established a trusteeship over Local 134, pursuant to 29 U.S.C. § 462, on the grounds, *inter alia,* that Local 134 had improperly excluded approximately 1,000 qualified individuals from membership in it, that it was not properly enforcing its labor agreements, and that it had "charges and allegations" pending against many of its key officers. During the trusteeship the IBEW renegotiated several provisions of Local 134's existing collective bargaining agreements with the Chicago Electrical Contractors' Association (the "Contractors' Association"). In particular, the IBEW renegotiated provisions of that agreement regarding the manner in which members of Local 134 would be referred for jobs available with the Contractors' Association. Previously, referrals had occurred pursuant to the so-called "Seniority System," which preferred members of Local 134 who had been electricians the longest over those with less seniority. The IBEW replaced the Seniority System with the so-called "Book System," which preferred members who had been out of work the longest over those who had worked more recently. It did not put this issue to a vote of Local 134's members, which plaintiffs contend violated the IBEW's constitution.

Plaintiffs Maher and Kelly, who had substantial seniority rights under the Seniority System, initiated a class action lawsuit in November 1990, seeking both injunctive and monetary relief. On March 2, 1993, the dis-

---

* The Honorable Barbara B. Crabb, Chief Judge of the Western District of Wisconsin, is sitting by designation.

trict court entered a Memorandum and Order that certified the case as a class action; ruled on several procedural issues; peeled away some allegations in plaintiffs' pleadings that the court deemed plaintiffs had abandoned; denied plaintiffs' cross-motion for summary judgment on the remaining claims; and granted defendant's motion for summary judgment on those claims. This appeal concerns only the merits of those claims that the court held plaintiffs had not abandoned.

We review the decision to grant or deny a motion for summary judgment *de novo*. *Lister v. Stark*, 942 F.2d 1183, 1187 (7th Cir.1991). Plaintiffs claim that the IBEW violated its own constitution by renegotiating Local 134's referral system without allowing the local union's members to vote on the issue, in violation of both the LMRDA and the NLRA. They moved the district court for summary judgment on these points, as did the defendant. Plaintiffs' briefs before this Court, however, argue only that summary judgment was improperly granted to the defendant. We consider, therefore, that plaintiffs have waived the argument that they themselves are entitled to summary judgment. Cf. *Hartmann v. Prudential Insurance Co. of America*, 9 F.3d 1207, 1212 (7th Cir.1993) ("Failure to press a point (even if it is mentioned) and to support it with proper authority forfeits it ....") (citations omitted). Accordingly, we address only whether summary judgment was properly granted in defendant's favor, and we conclude that it was.

### Analysis

Both of plaintiffs' claims that the IBEW violated federal law are premised on the argument that the IBEW acted in contravention of its own constitution by renegotiating the referral system without obtaining the consent of Local 134. The provision of the LMRDA that plaintiffs claim the defendant violated states:

Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body....

29 U.S.C. § 462. The provision of the NLRA that plaintiffs claim defendant violated allows suits to be brought in federal court "for violation of contracts between an employer and a labor organization [covered by the Act] ..., or between any such labor organizations...." 29 U.S.C. § 185(a). In this case the IBEW's constitution is a contract between the IBEW and its local unions, Local 134 in particular; plaintiffs, as individual union members, may sue to enforce the contract. *Wooddell v. International Brotherhood of Electrical Workers*, —— U.S. ——, ——, ——, 112 S.Ct. 494, 499, 500, 116 L.Ed.2d 419 (1991). This suit, therefore, boils down to a disagreement between the parties over interpreting the IBEW's constitution: Plaintiffs claim that the IBEW's actions during the trusteeship violated its constitution and therefore also constituted violations of the LMRDA and the NLRA; defendant argues that it did not violate its constitution and that, as a consequence, the federal laws at issue here were not violated.

The section of the IBEW's constitution that plaintiffs cite in support of their claim states that:

The [International President] or his representatives shall not enter into agreements affecting wages, hours and conditions of employment where local union agreement, covering such employment already exists, without first notifying at least thirty (30) days in advance of such agreements, the local unions so concerned or affected, in a district, and then *only by procuring consent of a majority of the local unions in the district or the individual local union affected by this agreement.*

IBEW Constitution, Article IV, Section 3(13) (emphasis added). The parties agree that the renegotiated collective bargaining agreement does affect wages, hours and conditions of employment. They also agree that the members of Local 134 did not vote on the new agreement. They disagree, however, both on the interpretation of the foregoing section and on its applicability to a local union that is in trusteeship.

The plaintiffs assert that the IBEW's constitution "clear[ly] and unambiguous[ly]" required the IBEW to obtain "majority con-

sent" of Local 134's members before it renegotiated the referral system. According to plaintiffs, "the only issue remaining in this case is how this 'majority consent' was to be obtained." Pl. Opening Br. at 10. We disagree. Article IV, Section 3(13), as the district court recognized, requires that when the IBEW enters an agreement affecting the wages, hours and conditions of employment of the members of several local unions, a majority of those unions must consent. The section is silent as to how each local union is to determine whether it consents to the agreement. Likewise, when the IBEW enters an agreement affecting the wages, hours and conditions of employment of the members of only one local union, that union must consent. The section is similarly silent as to how that union is to determine whether it consents to the agreement.[1] There is no need to resort to extrinsic evidence to determine that this section does not require the IBEW to get the consent of a majority of each local union's members before entering certain agreements. We do not resort to such evidence in making this determination and, *contra* plaintiffs' briefs, neither did the district court.

The section does, however, require the IBEW to obtain the consent of the individual local union, if there is only one, affected by the new agreement. If the section applies to a local union that has been placed in trusteeship by the IBEW, then additional questions would be raised as to how such consent would be obtained and whether it was obtained in this case. Because the IBEW has made the reasonable determination—cf. *Air Wisconsin Pilots Protection Committee v. Sanderson,* 909 F.2d 213, 218 (7th Cir.1990), certiorari denied, 498 U.S. 1085, 111 S.Ct. 958, 112 L.Ed.2d 1045—that Article IV, Section 3(13) does not apply to local unions in trusteeship, we need not reach these issues.

Article IV, Section 3(2) of the IBEW Constitution authorizes the International President "To decide all questions of law, disputes or questions in controversy

however arising...." In this case the International President has determined that Article IV, Section 3(13) does not apply to a local union in trusteeship. We must defer to a union's interpretation of its own constitution so long as the interpretation is not unreasonable. *Air Wisconsin Pilots Protection Committee,* 909 F.2d at 218. In this case it was not unreasonable for the IBEW, through its International President, to conclude that Article IV, Section 3(13) does not apply during a local union's trusteeship. Because the constitution does not directly address the issue of administering a trusteeship, the interpretation does not conflict with the plain meaning of any provision of the constitution. In addition, as the district court stated:

> The International President's determination is consistent with the purposes of a trusteeship. The establishment of a trusteeship is a drastic action undertaken by an International in an attempt to control and rectify serious problems at the local level. A trusteeship necessarily involves a curtailment of the power of a local union and its members and officers. It would be inconsistent with the purpose of a trusteeship if local unions and their members had to pass on the reforms instituted by the trustees. The trustees could be stymied at every turn in their efforts to reform the local.

Pl.App. at 18.

### Conclusion

Plaintiffs' claims that the IBEW acted illegally under the LMRDA and the NLRA are both premised on the notion that Article IV, Section 3(13) of the IBEW's constitution was violated when the IBEW renegotiated Local 134's collective bargaining agreements during trusteeship without first obtaining Local 134's consent. Because the IBEW, through its International President, reasonably determined that Article IV, Section 3(13) does not apply to a local union in trusteeship, we conclude that IBEW's actions did not, as a matter of law, violate the IBEW's constitu-

---

**1.** The IBEW points out that "The IBEW Constitution does not require local unions to submit collective bargaining agreements to their membership for ratification, and Local 134 does not have such a requirement in its bylaws and has never done so in practice." Def.Br. at 10 (citations to the record omitted).

tion. If defendant's actions did not violate the IBEW's constitution then plaintiffs have no complaint either under 29 U.S.C. § 185 or under 29 U.S.C. § 462. The district court's grant of summary judgment to the defendant on these issues is accordingly affirmed.