**Edna HOWARD, Plaintiff–Appellant,**

v.

**Herby WEATHERS, Jr. and American Postal Workers Union, Chicago Local, Defendants–Appellees.**

**No. 97–1903.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 26, 1997.

Decided March 17, 1998.

Robert E. Bloch (argued), Anne L. Hunter, Dowd & Bloch, Chicago, IL, for Plaintiff–Appellant.

Chester L. Blair, Phyllis Russell (argued), Blair & Cole, Chicago, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and EASTERBROOK and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

Edna Howard, a member of the Chicago local of the postal workers' union, sued the union and its president claiming that they had denied her an equal right to vote at a meeting of the union, in violation of her voting and free speech rights under sections 101(a)(1) and (2) of the Landrum–Griffin Act, 29 U.S.C. § 411(a)(1), (2), and also in violation of the union's constitution. 29 U.S.C. § 185. The district judge entered judgment for the defendants after a bench trial. Section 101(a)(1) makes the right to vote conferred by the section "subject to reasonable rules and regulations in" the union's constitution and bylaws, and the principal issues presented by Howard's appeal are the latitude that a union is entitled to in interpreting its constitution and the reasonableness of the interpretation that denied her the right to vote at the meeting in question. Her claim

that her right of free speech was violated adds nothing to her claim that she was denied an equal right to vote, because there was no interference with any speech or conduct of hers other than voting.

Howard is a supporter of William Kinslow, a former officer of the union who was permanently expelled at a meeting in 1992 on the recommendation of a committee of the union. Kinslow refused to appear before the committee that "tried" him, and he did not complain about his expulsion to the National Labor Relations Board or the Department of Labor. Years earlier Kinslow had blown the whistle on a corrupt president of the union, Tommie Briscoe. Kinslow had also sued the union, seeking (among other things) damages for retaliation against him for exercising his rights; and the ground of his expulsion in 1992 was that by his suit he had exposed the union to civil liability, an express ground in the union's constitution for expulsion.

Kinslow's whistleblowing was vindicated when, the year after his expulsion, Briscoe was convicted of embezzlement of union funds and related offenses and sentenced to prison. Howard wanted Kinslow reinstated in the union. But whenever she brought the matter up at the union's general meetings, the president, defendant Weathers, who was an ally of Briscoe, refused to recognize her. Finally she invoked a provision of the union's constitution that requires the calling of a special meeting of the union upon a petition signed by at least 5 percent of the union's membership. Although Howard got the required number of signatures, Weathers repeatedly refused to convene the special meeting. Only after she filed this suit did he relent. But when at the meeting she tried to bring up the issue of Kinslow's being reinstated, Weathers ruled her out of order on the ground that a permanent expulsion could not be reconsidered. A motion to adjourn was then made and carried.

█ Howard points out that the union constitution places no restriction on the matters that may be considered at a special meeting, except that they must have been listed on the agenda submitted with the petition; the reinstatement of Kinslow was listed there. Howard argues that by preventing her from vot-

ing on Kinslow's reinstatement at the special meeting, Weathers and the union denied her a voting right secured by the union's constitution, in violation of Landrum–Griffin. The defendants riposte that the constitutional provision is reasonably, although they concede not inevitably, interpreted to forbid the reconsideration of matters determined with finality at previous meetings; the expulsion of Kinslow, they add, was such a matter because it was a permanent expulsion.

Although the union's constitution is much easier to amend than the Constitution of the United States—it can be done by a simple majority of the members present and voting at a regular membership meeting, provided the proposed amendments were read at two previous such meetings—we do not understand the plaintiff to be arguing that the union's constitution is any more of a straitjacket than the federal Constitution. She is right not to deny this, see *Maher v. International Brotherhood of Electrical Workers,* 15 F.3d 711, 714 (7th Cir.1994) (per curiam); *Allen v. United Transportation Union,* 964 F.2d 818, 821 (8th Cir.1992); *Newell v. International Brotherhood of Electrical Workers,* 789 F.2d 1186, 1189 (5th Cir.1986); *Monzillo v. Biller,* 735 F.2d 1456, 1464 (D.C.Cir.1984); 29 C.F.R. § 452.3, though for a reason different from the one that counsels flexible interpretation of the limitations that the Constitution places on legislative action: not the difficulty of amending the Constitution, *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 415, 4 L.Ed. 579 (1819), but the desire to minimize judicial entanglement in labor relations. See *Clayton v. United Automobile Workers,* 451 U.S. 679, 687–88, 101 S.Ct. 2088, 2094–95, 68 L.Ed.2d 538 (1981).

The flexible interpretation of a document includes where appropriate the interpolation of implied terms. This principle is frequently invoked in labor contexts. E.g., *Litton Financial Printing Division v. NLRB,* 501 U.S. 190, 203, 111 S.Ct. 2215, 2223–24, 115 L.Ed.2d 177 (1991); *Atchley v. Heritage Cable Vision Associates,* 101 F.3d 495, 499 (7th Cir.1996); *Ethyl Corp. v. United Steelworkers of America,* 768 F.2d 180, 186–87 (7th Cir.1985). The qualification ("where appropriate") should be borne in mind. E.g., *Wes-*

*towne Shoes, Inc. v. Brown Group, Inc.*, 104 F.3d 994, 997 (7th Cir.1997). But the fact that the union's constitution places no limitations on the frequency of special meetings and sets so low a threshold for calling such a meeting (the 5 percent rule) makes it well-nigh imperative that there be implied limitations on the matters that can be addressed. Otherwise the special meetings could become potent devices of harassment and obstruction.

One can imagine reasonable limitations of both a substantive and a procedural character. The first would be illustrated by limiting special meetings to matters germane to the union's mission, thus excluding a special meeting to discuss the condition of the Brazilian rain forest. The second is illustrated by a limitation on the reconsideration of matters previously resolved. Suppose Howard had gotten a vote on Kinslow's reinstatement, and had lost (the likely outcome, judging by the fact that the motion to adjourn the meeting carried); could she have resubmitted a petition for a special meeting the next day, seeking a revote on the identical issue? Nothing in the words of the union's constitution would prevent this, but it strikes us as an eminently reasonable interpretation of the constitution to prevent it. The interest in finality is not limited to the judicial process. Its importance in the legislative process is recognized in Robert's Rules of Order, which with immaterial exceptions allow reconsideration only upon the motion of a member who had supported the measure sought to be reconsidered. *Robert's Rules of Order* § 36(a), p. 309 (rev. ed.1990); see also Martin H. Malin, *Individual Rights Within the Union* 17 (1988). We once remarked the appropriateness of "intelligent finality" in labor relations. *Air Wisconsin Pilots Protection Comm. v. Sanderson*, 909 F.2d 213, 219 (7th Cir.1990); cf. *Parker v. Merlino*, 646 F.2d 848, 854–55 (3d Cir.1981).

So some requirement of finality would be reasonable to interpolate into the union's constitution by interpretation, and we cannot say that a bar against the reconsideration of permanent actions would stretch interpretation beyond the breaking point. (We note in this connection that the national union's by-laws make Robert's Rules of Order expressly applicable to its deliberations "in the absence of other authority." American Postal Workers Union Bylaws, Art. 3, § 1.) A permanent expulsion would not differ materially from an expulsion that did not purport to be permanent if the expulsion could be rescinded by majority vote at a meeting held a week later on the petition of a small minority that might have been opposed to the expulsion. Once it is granted that the interest in finality is sufficiently weighty to entitle a reasonable interpreter of the union's constitution to make finality an implied term of the constitution's provision on special meetings, it cannot be unreasonable to preclude the reconsideration of permanent expulsions.

We have been calling the Kinslow issue "reconsideration" but it could equally well be called "reinstatement," and it could be argued that Howard was not quarreling with or seeking to reopen the decision to expel Kinslow but merely asking that the union's members give him a fresh chance on the basis of changed circumstances, the vindication of his whistleblowing. But even if—which is by no means clear, cf. *Sullair P.T.O., Inc. v. NLRB*, 641 F.2d 500, 503 (7th Cir.1981); *NLRB v. Truck Drivers, Local 705*, 630 F.2d 505, 508 (7th Cir.1980); *Florida Steel Corp. v. NLRB*, 529 F.2d 1225, 1234 (5th Cir.1976)—the change in circumstances would have resulted in Kinslow's reinstatement had it not been for the procedural bar, there is an ineliminable element of reconsideration, and hence of challenge to the earlier action, in the fact that the expulsion had been *permanent*. Reinstatement would require reconsideration of that essential feature of the earlier action, and would thus compromise the principle of finality. And, unlike other union constitutions, see *NLRB v. Local 73*, 840 F.2d 501, 507 and n. 10 (7th Cir.1988); Malin, *supra*, at 15, there is no mention of reinstatement in either the national or the local constitution here, or the bylaws. To draw a sharp line between reinstatement and reconsideration would be inconsistent with the practice in formal dispute resolution, where an effort to undo the effect of a prior judgment by reference to newly discovered evidence or other changed circumstances is treated as an effort to vacate that judgment,

rather than as a fresh and unrelated proceeding. E.g., Fed.R.Civ.P. 60(b)(2).

 Because barring reconsideration is authorized by interpretation of the constitution, Weathers would not have violated the constitution had he refused to call the special meeting if the only item on the proposed agenda had been the reconsideration of Kinslow's expulsion (but it was not), and he did not violate the constitution when he refused to allow a vote on that reconsideration. But this does not get the union home free on the Landrum–Griffin issues, though it is a complete answer to the claim under section 301 of the Taft–Hartley Act, 29 U.S.C. § 185, that the union violated its constitution. To pass muster under the Landrum-Griffin Act, an implied provision of a union constitution not only must be a reasonable *interpretation;* it must also be substantively reasonable, for only reasonable rules and regulations in the union's constitution and bylaws can be used to limit equal voting rights. E.g., *United Steelworkers of America v. Sadlowski,* 457 U.S. 102, 111–12, 102 S.Ct. 2339, 2345–46, 72 L.Ed.2d 707 (1982); *Serpico v. Laborers' International Union of North America,* 97 F.3d 995, 998–99 (7th Cir.1996). The test is the same whether the rule is express or implied. *Id.* at 998–99; *McGinnis v. Local Union 710,* 774 F.2d 196, 198, 200 (7th Cir. 1985). Malin, *supra,* at 78 and n. 167, suggests that there is no safe harbor for reasonable *implied* rules, but the cases he cites for the proposition provide only weak support for it, and he offers no reason for distinguishing between express and implied. An example of an unreasonable rule or practice would be a refusal to hold meetings that was motivated by a desire to keep the union's membership in ignorance of minority views. See, e.g., *Rodonich v. House Wreckers Union Local 95,* 817 F.2d 967, 973 (2d Cir.1987); *Parker v. Local Union No.* 1466, 642 F.2d 104, 106 (5th Cir.1981) (per curiam).

We do not know the actual scope of the union's implied principle of finality. The union does not write opinions interpreting its constitution. Its position can only be inferred from conduct, cf. *IDS Life Ins. Co. v. SunAmerica, Inc.,* 103 F.3d 524, 527 (7th Cir.1996); and, as far as we can tell, the bar to reconsideration has been applied only to permanent expulsions. In that context, the reasonableness of the bar is supported by the analogy to res judicata. The proceeding that resulted in the expulsion of Mr. Kinslow was like a case. He was accused of having exposed the union to civil liability, an express ground for expulsion; was found "guilty," albeit in absentia (but that was his own fault, for having refused to appear); was permanently expelled. He did not seek review of the local's action by the parent union within the time allowed for it, and so his permanent expulsion became final. In refusing to reopen the matter years later, the union was acting essentially as a court would have done—refusing to permit a collateral attack on its judgment. The conditions for the allowance of such attacks are stringent, as is plain from our earlier reference to Fed. R.Civ.P. 60(b), and they are not satisfied by Howard's showing.

 Against this, however, it can be argued that a rule which prevents the members of the union from voting to restore a former member whose expulsion may have resulted not from his misfeasance but instead from union politics strikes at the heart of the democratic processes that the Landrum–Griffin Act seeks to protect. See, e.g., *Finnegan v. Leu,* 456 U.S. 431, 441, 102 S.Ct. 1867, 1872–73, 72 L.Ed.2d 239 (1982); *International Brotherhood of Boilermakers v. Local Lodge* 714, 845 F.2d 687, 694 (7th Cir. 1988). Two considerations persuade us that this objection is not substantial in the circumstances of this case. The first is that Kinslow had remedies against his expulsion if it was based on improper grounds. If the expulsion violated the Landrum–Griffin Act, he could, after exhausting his intraunion remedies, have brought a suit in federal district court against the union, 29 U.S.C. § 412. He failed to pursue any of these remedies. Second, if a majority of the members want Kinslow back in the union they can easily get him back (and majority rule is the essence of union democracy, cf. *Curtis v. International Alliance of Theatrical Stage Employees,* 687 F.2d 1024, 1030–31 (7th Cir.1982)), though it will require two meetings rather than one. There is no suggestion that the principle of

finality that barred the membership from reconsidering Kinslow's expulsion protects the principle itself and thus prevents changing the interpretation of the union's constitution to permit special meetings to consider the reinstatement of permanently expelled members, unless they had been expelled under a provision of the constitution, inapplicable here, that *requires* permanent expulsion for specified conduct. The constitution cannot be amended at a special meeting, but an interpretation of the constitution can be. Res judicata is not a bar to the reconsideration of a principle of law. The only impediment to reconsidering the rule against reconsideration would be stare decisis, and that would merely be an argument that supporters of the rule might make in favor of its retention. If the majority of the members voting at the special meeting voted to change the rule, it would be changed, and the way would be clear for the vote that Howard desires.

Affirmed.