Randall E. PERRY, Plaintiff–Appellant,

v.

MILLION AIR, a/k/a Hopkins Aviation and M.H.T., Inc.; Local No. 507, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants–Appellees.

No. 90–4003.

United States Court of Appeals, Sixth Circuit.

Argued May 21, 1991.

Decided Aug. 30, 1991.

Rehearing and Rehearing En Banc Denied Oct. 16, 1991.

---

Harold L. Williams (argued and briefed), Legal Aid Soc. of Cleveland, Susan E. Morgenstern, Cleveland Legal Aid Soc., Cleveland, Ohio, for plaintiff-appellant.

Douglas J. Paul, argued and briefed, Chattman, Garfield, Friedlander & Paul, Cleveland, Ohio, for defendants-appellees.

Before GUY and RYAN, Circuit Judges, and Joiner, Senior District Judge.*

PER CURIAM.

Plaintiff, Randall Perry, appeals from a summary judgment for defendants Million Air and Local No. 507, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,[1] in this hybrid section 301 action. 29 U.S.C. § 185(a). We affirm.

I.

Perry was hired as a line service technician by Million Air in September 1984, and at the time of his discharge was a shop steward for the defendant union, the collective bargaining representative for employees of Million Air. Article III, paragraph 9 of the collective bargaining agreement (CBA) provided that:

> Each employee is to receive during each work day, an unpaid lunch period of not less than thirty (30) minutes, not later than five (5) hours nor sooner than three (3) hours after starting work, except Employer may schedule a paid lunch period of twenty (20) minutes or unpaid "lunch on the fly" during scheduled working hours.

On August 26, 1986, Perry requested and received permission from his shift supervisor, Eric Anderson, to take "lunch on the fly" at midnight, one-half hour before the end of his shift, having been delayed from taking lunch at an earlier time because of work flow. At 12:20 a.m., Perry was seen in a convenience store a mile or two from the plant by a line service manager, Dale Krupla.

---

* Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

1. Defendant Million Air was dismissed on February 6, 1991. Hereinafter this opinion will refer only to defendant Local No. 507 or "union."

The next morning Krupla checked Perry's time card and found that it indicated that Perry had clocked out at 12:32 a.m. At the end of his shift that day, Perry was called into the manager's office. Perry was accused of leaving the premises without permission and having his time card punched by another worker. Although Perry denied the charges, he was discharged by the company's owner, Lawrence Morgan. Only after discharging Perry did the company seek to verify whether he had requested permission to leave the premises.

The union filed a timely grievance on Perry's behalf, and a reinstatement hearing was held on September 8, 1986. Evidence was presented reflecting the facts set out above, and also that prior to the advent of new management at the plant, in March 1986, it had been common practice to allow occasional off-premises lunches "on the fly." The company's representatives claimed ignorance of this past practice, and asserted that it would not have been allowed had the present management been aware of it. The company refused to reinstate Perry.

The CBA provided that the union must demand arbitration within 30 days of the grievance hearing. However, the union scheduled a second reinstatement hearing on October 7, 1986. After the second reinstatement hearing, the company again refused to reinstate Perry.

On October 21, 1986, plaintiff wrote to Local 507, requesting that it take his grievance to arbitration. Following renewed negotiations with the company, Local 507 prevailed upon the company to reinstate Perry, and an agreement settling the grievance was drawn up in early November 1986. On November 6, 1986, counsel for Local 507, Richard Ross, met with Perry to discuss the terms and conditions of the settlement.

Perry objected to three terms related to the fact that he was being re-hired as a new employee: (1) that he would receive only starting wages, (2) be subject to discharge without cause during the first 90 days, and (3) would have a ten-month delay before being eligible for medical benefits. Ross then returned to the company and conducted further negotiations. These negotiations were entirely successful, securing Perry his former wage plus an intervening raise, the company's promise not to discharge Perry without just cause, and immediate medical benefits.

Perry conceded at his deposition that he subsequently received a copy of the settlement agreement with the new terms written in at the bottom. He was informed that he should proceed to the office of the company's counsel to sign the settlement agreement. However, Perry did not go to the office of the company's counsel to sign the agreement, nor did he communicate any further objections to the agreement to the union, and the settlement agreement was eventually withdrawn by the company.

On December 8, 1986, Perry filed this hybrid section 301 action. With the consent of the parties, the case was tried to a magistrate judge, pursuant to Federal Rule of Civil Procedure 73(a).

Following discovery, Perry filed a motion for summary judgment against Local 507, arguing that it had acted arbitrarily, capriciously, and in bad faith by allowing the deadline for arbitration to pass and then attempting to force him to sign an inequitable settlement agreement. Perry asserted that he had had two objections to the final settlement agreement: that he remained a probationary employee and would not have had access to the grievance procedure if discharged, and that the settlement agreement was not redrafted to incorporate the new terms within the body of the agreement, which, according to Perry, made them invalid. Defendants filed a cross-motion for summary judgment.

In granting summary judgment for defendants, the magistrate judge found that the union did not allow the deadline to expire, but had properly relied upon a local practice of treating the grievance procedure deadlines as flexible. The magistrate judge also held that the company would have been obligated to appear at arbitration after the deadline had passed because the company's act of continuing the negoti-

ations beyond the arbitration deadline functioned as a waiver, and arbitrability would have been a question for the arbitrator. The magistrate judge found that the union had acted in good faith in negotiating as favorable a settlement as it could for Perry. In light of these facts, and Perry's subsequent failure to communicate any further objections he had to the settlement agreement, the magistrate judge denied plaintiff's motion for summary judgment, and granted summary judgment for defendants in light of his conclusion that the union did not act arbitrarily, capriciously, or in bad faith. Plaintiff now brings this appeal.

## II.

A hybrid section 301 action requires proof "that the employer's action violated the terms of the collective-bargaining agreement and that the union breached its duty of fair representation." *Chauffeurs, Teamsters & Helpers v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990). Judgment was granted in the present case because the court found for the union on the latter of these questions. "[A] union breaches its duty of fair representation if its actions are either arbitrary, discriminatory, or in bad faith...." *Air Line Pilots Ass'n v. O'Neill*, —— U.S. ——, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991).

### Arbitrary Conduct of the Union

Perry's principal argument on appeal is that the magistrate judge erred in concluding that the union did not act arbitrarily, because the union allowed the arbitration deadline to pass without taking action on his behalf. The Supreme Court has recently observed that "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 [73 S.Ct. 681, 686, 97 L.Ed. 1048] (1953), as to be irrational." *O'Neill*, 111 S.Ct. at 1130. The magistrate judge properly relied upon *Ruzicka v. General Motors Corp.*, 649 F.2d 1207 (6th Cir.1981)

(*Ruzicka II*), in which this court held that a union does not act arbitrarily in allowing an arbitration deadline to pass without a decision on the merits of a grievant's claim, where the union acted in reliance on a local practice of flexibility in grievance procedure deadlines.

Plaintiff asserts that there was no evidence of such a practice in this case. Plaintiff's arguments do not acknowledge the facts as found by the magistrate judge, which are clearly supported by the record. The union's counsel testified that he relied upon a local practice of flexibility in the grievance process, which made the contractual deadlines immaterial. Moreover, the circumstances surrounding the negotiation of the settlement agreement suggest that this reliance was justified. The company took part in a second reinstatement hearing that was not provided for by the CBA, and continued negotiating with the union after that hearing. The company in fact agreed to Perry's reinstatement after the contractual arbitration deadline had passed.

While it is true that the union counsel testified that he had no experience in grievance procedures involving the new management at Million Air, he testified, however, that there was a such a practice locally. In *Ruzicka II*, the alleged prior practice was supported by evidence of past relations between the union and employer at issue. However, we relied upon the Supreme Court's decision in *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), for the proposition that past practice is relevant in the interpretation of collective bargaining contracts. *Ruzicka II*, 649 F.2d at 1211 n. 2. In *United Steelworkers*, the Court noted that "the industrial common law—the practices of the *industry* and the shop—is equally a part of the collective bargaining agreement," *id.* at 581–2, 80 S.Ct. at 1352 (emphasis supplied), suggesting that evidence of past practice outside of the relationship between the particular employer and union at issue is also relevant. Moreover, the question is whether the union acted arbitrarily. If a union can demonstrate that it relied in good faith upon a past practice, the union did not act

arbitrarily. The magistrate judge did not err in making the credibility determination that union counsel relied upon his belief that strict conformity to the grievance procedure deadlines was unnecessary, particularly in light of the circumstantial evidence supporting the union counsel's reliance.

Plaintiff also attacks the magistrate judge's suggestion that the company's obligation to proceed to arbitration was itself a question for the arbitrator, and, based upon *United Steelworkers v. Fermet Reclamation, Ltd.,* 627 F.Supp. 1213 (N.D.Ill. 1986), that the company's conduct may have waived the arbitration deadline. We need not address these contentions in light of our conclusion that the union justifiably relied upon a practice of flexibility in the grievance process. Whether the company could have been forced to arbitrate after the contractual arbitration deadline is immaterial in light of the evidence that neither company nor union regarded the union as foreclosed from further pursuing the grievance.

Union Bad Faith

Plaintiff also assigns as error the magistrate judge's conclusion that plaintiff failed to produce evidence of bad faith on the part of the union, asserting that the bad faith was shown by the union's attempt to force plaintiff to sign an agreement that was not favorable to him. However, to the extent that Perry viewed the agreement as unfavorable, his ability to secure more favorable terms was apparent to him from the fact that his prior requests were met through negotiations. Perry's failure to communicate any further objections which he may have had prevented the union from even attempting to negotiate a settlement to Perry's satisfaction.

Perry asserts that the magistrate judge did not give proper weight to his deposition testimony that in his last conversation with union counsel, Ross's final statement was that he "couldn't do anything more for him." Plaintiff argues that the alleged statement was a threatening reference to the deadline for arbitration having elapsed, and was intended to force his signature on the agreement. It is at least as plausible, however, that the statement meant merely that union counsel felt he had gained as many concessions from the company as he could. We, like the magistrate judge, "do[ ] not believe that any reasonable factfinder could find bad faith in Mr. Ross recommending to the plaintiff that he accept the settlement upon the modified terms."

Plaintiff also points to the union's deletion of language in the settlement agreement stating that a named representative of the union had fully explained the terms of the agreement to him. The magistrate judge concluded that the union was concerned about its liability under this provision, and that the deletion from the provision could not suffice to show bad faith because no alteration of Perry's rights under the agreement resulted from it. We find no error in this conclusion.

Summary Judgment

Plaintiff asserts that the magistrate judge erred in granting summary judgment for defendants based upon his decision on plaintiff's motion alone. Plaintiff's argument appears to be that there were material issues of fact, or, in the alternative, that the magistrate judge was required to evaluate defendants' arguments before granting summary judgment. However, it is apparent from the magistrate judge's opinion and the record before us that the facts were not materially disputed. In light of the undisputed facts, the magistrate judge acted properly in granting summary judgment for the defendants. Plaintiff appears to argue in addition that the magistrate judge was somehow prevented from granting summary judgment for the defendants because the theory presented in defendants' motion for summary judgment was wrong. Assuming that was the case, however, it did not bar the magistrate judge from granting judgment for the defendants in light of the undisputed facts, upon a proper application of the law.

AFFIRMED.

RYAN, Circuit Judge, dissenting.

Because I disagree with the majority's conclusion that the union did not act arbi-

trarily by inexplicably forfeiting its right to arbitrate Perry's grievance, I dissent.

At the outset I must take issue with the majority's view that the union's negotiations on Perry's behalf were "entirely successful." Perry's testimony reveals that his principal objection to the original version of the proposed settlement agreement was that it allowed the company to terminate him without cause during a 180–day probationary period following his reemployment. This settlement provision rendered the company's agreement to reinstate Perry practically meaningless since, as Ross testified, company officials "were rather adamant in their opinion [that Perry] was not someone they wanted working for them." Given the officials' continuing heartfelt desire to part company with him permanently, Perry reasonably expected that his career as a probationary employee might prove rather short-lived. As the majority notes, Perry received a second version of the proposed settlement agreement, which contained some new terms handwritten at the bottom. However, while these new terms apparently alleviated Perry's concerns regarding wage and benefit issues, the record does not reflect that the new terms addressed Perry's overriding desire to obtain genuine protection from arbitrary dismissal.[1]

Given that the settlement terms proved rather illusory from Perry's point of view, the question becomes whether the union acted consistently with its duty of fair representation in failing to announce an intention not to arbitrate, before the contractually specified deadline expired. The majority correctly notes that a union violates its duty to refrain from arbitrary conduct only if "the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Air Line Pilots Ass'n v. O'Neill,* 111 S.Ct. at 1130 (citation omitted).

Nevertheless, in keeping with the duty of fair representation, "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion...." *Vaca v. Sipes,* 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967). A union's decision is arbitrary, and therefore violative of the duty of fair representation, if the decision is not based upon rational criteria but instead arises from caprice or is without reason. *Poole v. The Budd Co.,* 706 F.2d 181, 184–85 (6th Cir.1983); *Ruzicka II,* 649 F.2d at 1211–12 n. 3.

In other words, a union incurs liability for action or inaction which reveals "the type of arbitrariness which reflects reckless disregard for the rights of the individual employee." *Id.* at 1212. For example, "when a union makes no decision as to the merit of an individual's grievance but merely allows it to expire by negligently failing to take a basic and required step towards resolving it, the union has acted arbitrarily and is liable for a breach of its duty of fair representation." *Ruzicka v. General Motors Corp.,* 523 F.2d 306, 310 (6th Cir.1975) (*Ruzicka I*). Of course, the union is not liable if it establishes a genuine justification, such as reliance on a prevailing practice not codified in the bargaining agreement. *Ruzicka II,* 649 F.2d at 1211–12.

Here, unfortunately, the record does not hint that the union, on the basis of some rational criteria, actually made a conscious decision not to pursue arbitration. The collective bargaining agreement provides that the union's executive board possesses final authority to decline to process a member's grievance further "if, after a reasonable and fair exercise of the Board's judgment, it is concluded that a grievance (1) lacks merit or justification ... or (2) has been settled or adjusted in a fair and equitable manner." I find no evidence, or allegation, that the executive board exercised its judgment in this case. Indeed Ross testified

---

1. Perry maintains that the company continued to insist that he resume work without the job security afforded by the grievance system available to regular, non-probationary employees. According to Ross, he passed along company officials' *oral* assurances that they had no desire to discharge Perry without cause during the probationary period. In any event, the agree-

ment contained a standard integration clause specifying that the *written* terms constituted the entire agreement between the company and Perry. The magistrate judge found, "Under the terms of the settlement agreement as finally arrived at ..., the only issue not resolved in a manner completely favorable to ... [Perry] was the so-called probationary period."

that to his knowledge, the executive board never considered the issue of arbitration because "based on everyone's understanding, Mr. Perry was going to sign the [settlement] agreement." Amazingly, the union's brief fails to offer even a *post facto* rational explanation, such as reliance upon past practice, to justify the union's forfeiture of its right to arbitrate.[2]

Nevertheless, the majority concludes, "The magistrate judge did not err in making the credibility determination that union counsel relied upon his belief that strict conformity to the grievance procedure deadlines was unnecessary, particularly in light of the circumstantial evidence supporting the union counsel's reliance." Initially, I note that a summary judgment proceeding is not the appropriate stage for making credibility determinations; at that stage, the court must indulge all reasonable inferences in favor of the nonmovant. Moreover, as noted, the union has presented no evidence that the union made a conscious decision, based upon past practice or any other plausible factor, not to preserve the union's right to compel arbitration of Perry's grievance.

Certainly, a union's honest mistake as to whether an alleged work place practice could be proven does not constitute a breach of the three-pronged duty of fair representation. *See Poole*, 706 F.2d at 184–85. However, this case involves no allegations or evidence concerning such a possible good-faith mistake. As the majority observes, Ross testified that he had no past dealings with the company upon which to base such a mistaken belief. Union and management testimony and admissions suggest that both union and management enforced the bargaining agreement's terms literally, without routinely relaxing deadlines or having recourse to alternative means of resolving labor-management disputes.

"In administering the grievance and arbitration machinery as statutory agent of the employees, a union must, in good faith and in a nonarbitrary manner, *make decisions* as to the merits of particular grievances" and the potential fruitfulness of pursuing arbitration. *Vaca*, 386 U.S. at 194, 87 S.Ct. at 919 (emphasis added); *cf. Baker v. General Mills, Inc.*, 918 F.2d 178 (6th Cir.1990) (unpublished disposition). The failure of Perry's union to make a reasoned decision concerning the need for arbitration of his grievance reflects a reckless disregard for employee rights. The union's "success" in achieving a virtually meaningless settlement offer for Perry does not excuse the union's apparent failure either to pursue arbitration or to decline to pursue it on the basis of rational, articulated grounds. Therefore, on the basis of the record as presently developed, I cannot conclude as a matter of law that the union fulfilled its duty of fair representation.

---

**2.** The union needed only to inform Million Air, prior to the deadline, of the union's *intention* to arbitrate in order to preserve its right to actually submit the case to an arbitrator in the future. Union and management would have remained free to reach an informal, negotiated settlement at their leisure prior to actually committing themselves to pursuing arbitration. Once the deadline passed without union action, the union permanently forfeited its contractual right to compel arbitration, unless the union could establish that the company somehow waived its right to enforce the deadline.