7 F.3d 232
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James CURLEE, Plaintiff-Appellant,
v.
SEARS, ROEBUCK & CO., & Local Union No. 243 of the
International Brotherhood of Teamsters,
Warehousemen, Chauffeurs, & Helpers of
America, Defendants-Appellees.
 No. 92-1652.
 United States Court of Appeals, Sixth Circuit.
 Sept. 14, 1993.
 
 Before: NELSON and SUHRHEINRICH, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, James Curlee, a Sears employee, appeals a summary judgment awarded to defendants, Sears, Roebuck and Company ("the employer") and Local Union No. 243 of the International Brotherhood of Teamsters, Warehousemen, Chauffeurs and Helpers of America ("the union"). Plaintiff sued his employer for a purported breach of the collective bargaining agreement and the union for an alleged breach of its duty of fair representation.
 
 
 2
 The instant suit arose from plaintiff's unsuccessful pursuit of a posted job opening for the position of leadperson/outside in 1990.[1] At the time he applied for the job, plaintiff already held the position of leadperson/inside.[2] The employer, pursuant to the terms of the collective bargaining agreement between the employer and union, invoked the Promotion Review Committee to rule on the job bids for the vacant position. The Promotion Review Committee consisted of equal representation from the employer and union, with representatives from each side co-chairing the proceedings. The Promotion Review Committee in the instant case, after a unanimous vote, awarded the position to another employee with less seniority than the plaintiff, but with more expertise and experience.
 
 
 3
 Plaintiff's complaint charged that: 1) his seniority entitled him to the job pursuant to the terms of the collective bargaining agreement; 2) the employer breached the collective bargaining agreement by awarding the job to another employee with less seniority; and 3) the union breached its duty of fair representation by failing to enforce the collective bargaining agreement on behalf of the plaintiff.
 
 
 4
 The plaintiff argues that he should have been awarded the position because he had the most seniority of the qualified applicants and because he was already a leadperson. Plaintiff asserts that he sought a lateral transfer to a comparable position and not a promotion requiring convention of the Promotion Review Committee. Plaintiff also claims that his bid on the new position was rejected in retaliation for his success in prevailing over the union in a 1985 law suit. The union sued plaintiff over plaintiff's refusal to pay union dues. The court in that case upheld plaintiff's refusal. Plaintiff charges that union officials refered to him as a "scab" and prevented him from obtaining the new position because of his legal victory and his general anti-union activism. Plaintiff further alleges that the union breached its duty of fair representation by discriminating against him on the basis of his anti-union activism and by failing to process his grievances.
 
 
 5
 In their motions for summary judgment, the union and employer controvert plaintiff's claims, arguing that: 1) all leadperson openings must be filled by the Promotion Review Committee pursuant to the collective bargaining agreement; and 2) the Promotion Review Committee, pursuant to the mandates of the collective bargaining agreement, selected the best qualified candidate. The district court concluded plaintiff had exhibited no genuine issue of material fact and granted defendants' separate summary judgment motions.
 
 
 6
 Plaintiff now appeals the district court's summary judgment, asserting that summary judgment was improvidently granted because: 1) there was a genuine issue of material fact regarding the employer's and union's violations of the terms of the collective bargaining agreement; and 2) there was a genuine issue of material fact regarding the union's breach of its duty of fair representation.
 
 
 7
 An appellate court must review de novo a grant of summary judgment. Pinney Dock & Transp. Co. v. Penn. Central Corp., 838 F.2d 1445, 1472 (6th Cir.1988), cert. denied, 488 U.S. 880 (1988). In a de novo review of the propriety of the district court's ruling, the court must consider the merits of the motion in their entirety. Choctow Nation v. United States, 119 U.S. 1, 30 (1886). Summary judgment is deemed appropriate where all of the pleadings, depositions, etc., show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Shelby County Health Care Corp. v. American Federation of State, County & Municipal Employees, Local 1733, 967 F.2d 1091, 1094 (6th Cir.1992); Canderm Pharmacal, Ltd. v. Elder Parmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). All inferences must be construed in the light most favorable to the party opposing the motion. Davidson & Jones Dev. Co. v. Elmore Dev. Co., Inc., 921 F.2d 1343, 1349 (6th Cir.1991).
 
 
 8
 To bring an action pursuant to § 301 of the LABOR MANAGEMENT RELATIONS ACT, 1947, a plaintiff must demonstrate "... the employer's action violated the terms of the collective-bargaining agreement and that the union breached its duty of fair representation." Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry, 494 U.S. 558, 564 (1989); DelCostello v. Teamsters, 462 U.S. 151, 163-164 (1983); Perry v. Million Air, 943 F.2d 616, 619 (6th Cir.1991). Because plaintiff failed to create a genuine issue of material fact with regard to either area, this court finds the district court properly granted summary judgment to both defendants.
 
 
 9
 Plaintiff alleges there were genuine issues of material fact regarding purported violations of the terms of the collective bargaining agreement. Plaintiff first argues the employer improperly convened a Promotion Review Committee to determine his candidacy for the position of leadperson/outside. Plaintiff posits that, because he held the position of leadperson/inside, the new leadperson/outside position he sought would be a lateral transfer and not a promotion. Thus, plaintiff contends that the employer should not have convened the Promotion Review Committee, pursuant to Article III, § 12(a) of the collective bargaining agreement, to determine his candidacy. The plaintiff, instead, insists that the general Article III, § 2 provision should govern.
 
 Article III, § 2 sets forth:
 
 10
 Job postings will be filled first by full time associates by seniority and/or currently holding the classification, if no full timers bid. Then part time to part-time by seniority. [sic]. Service Person postings shall be handled as described below.
 
 
 11
 Article III, § 2 nowhere states that a committee or official other than the Promotion Review Committee is designated to rule on job bids. The plain language of Article III, § 12(a), in fact, further refutes plaintiff's position:
 
 
 12
 A Promotion Review Committee will be established and shall consist of equal representation from the Company and the Union. A representative of the Union and a representative of the Company will act as co-chairpersons.
 
 
 13
 (a) The Promotion Review Committee will rule on job bids for the following classifications: Leadperson and Division 81/94 Technicians.
 
 
 14
 The plain language of the contract mandates that the Promotion Review Committee "will rule" on bids for the job of leadperson. Morgan Services, Inc. v. Local 323, Chicago & Central States Joint Board, Amalgamated Clothing & Textile Workers Union, AFL-CIO, 724 F.2d 1217, 1223 (6th Cir.1984). See also, Vic Wertz Distributing Co. v. Teamsters Local 1038, National Conference of Brewery and Soft Drink Workers of the United States of America and Canada, 898 F.2d 1136, 1141-1142 (6th Cir.1990). This mandate does not conflict with the provisions which set forth guidelines to be used by the committee in selecting the appropriate candidate for a particular job opening. See Article III, § 2. Thus, there is no genuine issue of material fact on this point.
 
 
 15
 Plaintiff further urges that because he had the most seniority of the eligible applicants, the Committee improperly denied him the position he sought. Plaintiff cites a portion of Article II, § 2(a) in support of his claim:
 
 
 16
 The Company will recognize the principle of seniority based upon the total length of the service in the bargaining unit. This means that in filling vacancies, determining layoffs and callbacks, and in making promotions, seniority will govern....
 
 
 17
 Plaintiff, however, ignores the rest of the quoted passage, which indicates that seniority is not the governing issue unless all other things are equal:
 
 
 18
 ... [S]eniority will govern where in the opinion of the Company, skill and ability are substantially equal.
 
 
 19
 In the instant case, the defendants put forth evidence that, though plaintiff had more seniority, the chosen candidate had more relevant repair experience, held more extensive relevant licenses and had a strong record of "outside" work. In contrast, according to the employer's records, plaintiff did not hold the appropriate license, had little recent relevant repair experience and, when he briefly worked in an outside capacity, had incurred customer complaints regarding his interpersonal communication skills. The Promotion Review Committee members, in separate affidavits, consistently demonstrated that they based their decision to give the job to someone with less seniority than plaintiff on the basis that the other person was more highly skilled and better able to succeed in the outside position. There is no evidence the Promotion Review Committee discussed plaintiff's anti-union activities. Further, the evidence revealed that, in 1979, plaintiff received a promotion over two other applicants with more seniority because he was the more skilled and able applicant. In his deposition testimony, he conceded that, in that instance, overlooking seniority was appropriate because of his superior ability.
 
 
 20
 The evidence reveals the Promotion Review Committee found the applicant it selected to be more skilled and better suited for the job than plaintiff. This determination is appropriate pursuant to the terms of the collective bargaining agreement. This court finds plaintiff failed to create a genuine issue of material fact regarding whether plaintiff was wrongfully denied the position he sought in violation of the collective bargaining agreement.
 
 
 21
 The plaintiff also charges there was a genuine issue of material fact regarding the union's purported breach of its duty of fair representation. Plaintiff charges that the union breached its duty of fair representation by denying him the position of leadperson/outside solely because he was not a dues paying union member and, in fact, was a self-styled anti-union activist. He also contends the union further discriminated against him by refusing to hear his grievance on the subject.
 
 
 22
 To show the union breached its duty of fair representation, the plaintiff must show the union engaged in arbitrary, discriminatory or bad faith conduct toward him. Chauffeurs, Teamsters and Helpers Local 391 v. Terry, 494 U.S. at 563; Vaca v. Sipes, 386 U.S. 171, 190 (1967). Plaintiff has failed to meet this burden.
 
 
 23
 Plaintiff established that he successfully prevailed against the union in a suit the union brought against him in the mid 1970s for non-payment of union dues. Since that time, plaintiff has not been a member of the union. Plaintiff contends he has campaigned vociferously against certain union actions and is called a "scab" by union officials for his refusal to pay dues. Deposition testimony confirms some union officials held a low opinion of plaintiff and also sustains his claim that he has been referred to as a "scab." Plaintiff has put forth no evidence, however, that the two union members of the Promotion Review Committee discriminated against him for the position he sought as leadperson, or gave false information to the other members.
 
 
 24
 On the issue of the union's denying plaintiff an opportunity to grieve, plaintiff likewise failed to put forth genuine issues of material fact. Plaintiff filed a grievance with the union on October 25, 1990, regarding his failure to obtain the leadperson position he sought. Plaintiff requested the posted position and damages in an amount to reimburse him for the gas and mileage he incurred since not getting the position.[3] The collective bargaining agreement provides no grievance procedure for unanimous decisions of the Promotion Review Committee. Article III, § 12(d) states:
 
 
 25
 A majority vote by the Promotion Review Committee shall be final and binding on all parties. Decisions by management in cases that are deadlocked are subject to the normal grievance procedure.
 
 
 26
 Pursuant to Article III, § 12(d) the "normal grievance procedure" applies only where the Committee is deadlocked. Thus, as the Committee in the instant case reached a unanimous decision, there is no issue of material fact regarding the union's failure to follow its grievance procedure.
 
 
 27
 The district court's award of summary judgment to defendants is AFFIRMED.
 
 
 
 [1]
 The duties of a leadman/outside focus primarily on the repair of brand name appliances in people's homes, but include certain training responsibilities
 
 
 [2]
 A leadman/inside has repair responsibilities similar to a leadman/outside, but without the customer contact
 
 
 [3]
 Unlike a leadperson/inside, a leadperson/outside is provided with a company car and mileage payments