Rick MADISON, Representative of Stage Employees Local 17, International Alliance of Theatrical Stage Employees and Motion Picture Machine Operators of the United States, Plaintiff–Appellant,

v.

GEORGE E. FERN COMPANY, Defendant–Appellee.

No. 01–5311.

United States Court of Appeals, Sixth Circuit.

Dec. 18, 2002.

Before BOGGS and COLE, Circuit Judges; and BATTANI, District Judge.*

PER CURIAM.

Rick Madison, a representative of the Stage Employees Local 17 of the International Alliance of Theatrical Stage Employees & Motion Picture Operators of the United States and Canada (the "Union"), appeals the district court's grant of the George E. Fern Company's ("Fern") motion for summary judgment in this case brought by the Union against Fern for breach of an existing Collective Bargaining

* The Honorable Marianne O. Battani, United States District Judge for the Eastern District of Michigan, sitting by designation.

Agreement ("CBA") to which they are both parties. The Union alleges that Fern hired a ninth senior employee, John Habenstein, in violation of the CBA, without providing the Union with "sufficient notice" of the vacancy and without obtaining approval from the Union. The Union seeks injunctive relief, including termination of the ninth senior employee or, in the alternative, if a determination is made that Fern can hire a ninth senior employee, that the employee be hired from the Union's Class A list. Additionally, the Union seeks damages in an amount to be determined and attorney's fees. For the reasons that follow, we reverse the district court's grant of summary judgment and remand the case for a factual determination as to whether "sufficient notice" was given of the intention to hire a ninth senior employee.

I

Fern, an exposition contractor in the Louisville area, and the Union have a longstanding relationship, having negotiated and entered into several CBAs. The most recent CBA, effective as of April 5, 1999, provides in relevant part:

Article II

*Management Rights*

The management of the Company and the establishment, size and the direction of the working forces, including, but not limited to, the right to hire, classify, . . . are the sole prerogatives and responsibilities of the Company, except to the extent limited herein.

. . .

Article VII

*Classifications and Hours of Work*

*Section 1* The classification of employees who shall work for the Company shall be:

A. Eight (8) senior employees. (See schedule A attached).

B. Union employees who shall be designated as Class A employees (see Schedule B attached). This list will be limited to seventy (70) individuals who established their willingness to be available for service with the Company. The list will be reviewed by the company and Union at each anniversary date of the contract and will be modified as mutually agreed upon, but in no event will exceed seventy (70) individuals. The annual changes to Class A roster will be limited to five individuals.

C. All other employees of the Company who shall be designated as Casual employees.

*Section 2* The Company will give the Union sufficient advance notice of all vacancies in the Senior Employee Group. If skill and ability are present, such vacancies shall be filled from the group of Class A employees. Management shall retain the right to judge "skill and ability" commensurate with the operational needs of the Company.

. . .

*Section 3* When hiring new employees, the Company shall make reasonable efforts to notify the Union of its needs at least 24 hours in advance of call.

. . .

Article XXVII

*Entire Agreement*

This agreement sets out the entire understanding between the Company and the Union. Neither party intends to be bound or obligated except to the extent that it has expressly so agreed herein, and this agreement shall be strictly construed.

The prior CBA, in effect from 1994–99, contained exactly the same provisions as those quoted above. The CBA in existence from 1991–94 also contained the same provisions, except that the number of senior employees was set at four instead of eight.

On April 7, 2000, Edwin Neal, a senior employee, resigned, leaving Fern with only seven senior employees. Fern alleges that it soon verbally informed the Union of its intention to replace Neal. It is not clear how this information was relayed, but the Union admits that it was aware of Neal's resignation in April 2000, and that qualified Union members applied for the job.

Fern additionally alleges that after Neal's resignation, Jeff Hall, Fern's general manager, consulted with Richard Lindenmayer, a Union foreman working for Fern, and that Lindenmayer encouraged Fern to hire another senior employee, in addition to Neal's replacement, thereby increasing the total number of senior employees to nine. Hall stated in an affidavit supporting the company's motion for summary judgment that Lindenmayer subsequently informed Hall that he had told the Union that Fern would "consider hiring two additional senior employees." Fern then hired Ivan Cundiff, an applicant from the Union's Class A list, to replace Neal, and John Habenstein, a nonunion member, as a ninth senior employee. Subsequent to this action, Hall sent a letter to Rick Madison, the business agent for the Union, on May 10, 2000, stating that Fern had "elected to expand [its] workforce and [had] decided to hire John Habenstein as an additional senior employee." Madison asserted in an affidavit opposing the company's motion for summary judgment that this letter from Hall was the "first notice

[he] received regarding the Company's intention [to hire] a ninth senior employee."

On June 7, 2000, the Union filed a complaint against Fern in Kentucky state court. The Union contended that Fern had violated the CBA in three ways: 1) by hiring a ninth senior employee, despite the language of Article VII apparently limiting the number of senior employees to eight; 2) by hiring a senior employee who was not referred to Fern by the Union or listed on the Class A list referenced in Article VII; and 3) by not informing the Union that there was a vacancy. Fern removed the case to federal district court based on federal question jurisdiction. *See* 28 U.S.C. § 1331; 29 U.S.C. § 185.

Cross motions for summary judgment were filed and the district court granted Fern's motion, dismissing the Union's claims with prejudice. The district court held that the CBA did not expressly limit the number of senior employees to eight and that the "common law of the shop" supported such an interpretation, since the number of senior employees had varied over the years. The district court also held that Fern had sufficiently notified the Union of a vacancy through Lindenmayer and finally, that it was within the company's discretion to hire a non-Union employee to fill the ninth senior position.

The Union filed a motion for reconsideration on January 22, 2001, presenting evidence that the Union declared to have been unavailable previously and stating that the district court had made an error as a matter of law. The new evidence proffered by the Union included the CBA in existence between 1991 and 1994, providing for only four senior employees, and a supplemental affidavit from Rick Madison. Madison's second affidavit corrected a mistake made in Madison's original affidavit, which had incorrectly referred to Lindenmayer as a "Union Steward" instead of a foreman, although Fern's general manager had correctly referred to Lindenmayer as a foreman in his affidavit. The Union's motion was denied by the district court, which held that even with this additional information, the Union failed to meet the standard of Federal Rule of Civil Procedure 59(e). On March 5, 2001, the Union appealed both decisions.

## II

We are asked to review two separate decisions made by the district court, one granting Fern's motion for summary judgment and the other denying the Union's motion for reconsideration.

We review the district court's grant of summary judgment *de novo*. *See Owens Corning v. National Union Fire Ins.,* 257 F.3d 484, 490–91 (6th Cir.2001). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the non-movant, establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED R. CIV. P. 56(c); *see also Terry Barr Sales Agency, Inc. v. All–Lock Co.,* 96 F.3d 174, 178 (6th Cir.1996).

A district court's ruling on a motion for reconsideration is generally reviewed for an abuse of discretion and is properly considered a motion to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e). *Huff v. Metropolitan Life Ins. Co.,* 675 F.2d 119, 122 (6th Cir. 1982). However, in reviewing a denial by a district court of a motion seeking reconsideration of a grant of summary judgment, we use differing standards of review, depending on the reason for the district court's denial. *See Basinger v. CSX Transportation, Inc.,* No. 94–3908, 1996 WL 400182, at \*3 (6th Cir. July 16, 1996). A district court's denial that is based on a

determination of law is reviewed *de novo*. *Columbia Gas Transmission Corp. v. Ltd. Corp.*, 951 F.2d 110, 112 (6th Cir.1991). A district court's denial on the basis of untimely evidence is reviewed by us for an abuse of discretion. *Huff*, 675 F.2d at 123 n. 5. In this case, the district court considered the new information presented by the Union and decided that there had been no clear error of law in the court's original ruling on the motion for summary judgment. Since this is a legal determination, we will review both district court decisions *de novo*.

**A. Does the CBA limit Fern to eight senior employees?**

■ We interpret provisions of the labor contract in this case according to the precepts of federal labor law. *Local 174, Teamsters, Chauffeurs, Warehouseman and Helpers of America v. Lucas Flour Co.*, 369 U.S. 95, 102–03, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir.1994). The enforcement and interpretation of collective bargaining agreements are governed, therefore, by traditional rules of contract interpretation, consistent with federal labor policy. *See John Wiley & Sons v. Livingston*, 376 U.S. 543, 548, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Armistead v. Vernitron Corp*, 944 F.2d 1287, 1293 (6th Cir.1991). "State law may be utilized so far as it is of aid in the development of correct principles or their application in a particular case." *John Wiley*, 376 U.S. at 543, 84 S.Ct. 909 (citing *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 457, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)). When a dispute arises, we look first to the explicit language of the agreement to determine, if possible, the clear intent of the parties. *Armistead*, 944 F.2d at 1293. Of obvious relevance is the context within which the language was drafted and the past practice of the parties involved. *See ibid.; Perry v. Million Air*, 943 F.2d 616, 619 (6th Cir. 1991). Finally, "[w]here ambiguities exist, the court may look to other words and phrases in the collective bargaining agreement for guidance." *Armistead*, 944 F.2d at 1293.

The Union contends that the CBA facially limits the number of senior employees to eight. Fern argues that the CBA requires that Fern have eight senior employees, but does not prohibit it from hiring more than eight. Fern points to the second paragraph of Article VII, Section One, which clearly limits the Class A list of employees to 70 individuals by stating that "[t]his list will be limited to seventy" and argues that if the parties had wished to limit the number of senior employees to eight and only eight, the same language would have been used in the first paragraph of that same section. This argument is persuasive and is supported by the past practice of the parties over the course of the two previous CBAs. The number of senior employees varied under those CBAs, going both above and below the number stated in the CBA.

The Union argues that this interpretation is not consistent with the past practice of the parties and does not reflect the parties' intent. The Union contends that the past practice of the parties was for Fern to seek the approval of the Union when it sought to employ senior employees in excess of the number established in the CBA. In support of this contention, the Union points to the CBA from 1991–94, which called for only four senior employees. Raising this number to eight was part of the negotiation that led to the creation of the new CBA that emerged in 1994. According to the Union, the bargain that was struck between the parties was that two of the new senior employees would be hired from outside of the Union,

while two would be Union members. This past practice could support an interpretation that each new hire made above and beyond the eight allowed by the contract was a bargained-for modification to the contract, with the Union allowing Fern to hire an additional employee in exchange for a commitment to hire a Union member into the position. However, the Union does not proffer this reasoning and does not offer any direct evidence in support of such an argument. In sum, the textual argument is stronger, and is not negated by the fact that Fern has worked with the Union when hiring new senior employees in the past.

## B. Can Fern hire a senior employee who is not a Union member?

■ The CBA requires Fern to hire individuals from the Class A list unless Fern determines that none of them have the requisite skill and ability to perform the job in question. Fern contends that it reviewed the applications it had on file from the Union's Class A list and determined that only Ivan Cundiff had sufficient skill and ability to meet Fern's needs as a senior employee. The Union contends that several of the applicants on the Class A list were qualified and that Habenstein was not. Nevertheless, Article II and Article VII of the CBA give Fern the sole right to judge an applicant's suitability and the Union does not argue otherwise. In addition, the Union has not presented any evidence that would support the contention that Fern disregarded its duty under the CBA to examine the Union's Class A list before choosing Habenstein.

## C. Did Fern give the Union sufficient advance notice of the vacancy, as required under the CBA?

■ Article VII of the CBA requires that Fern give the Union "sufficient ad-

vance notice of all vacancies in the Senior Employee Group." Fern claims that it satisfied its duty under the CBA to give the Union sufficient advance notice of a vacancy through Lindenmayer, the shop foreman. Fern relies on discussions between Fern's general manager, Hall, and Lindenmayer. These discussions are described in Hall's affidavit:

> Before I made any hiring decisions. I spoke with several of the Fern senior employees. This included Richard Lindenmayer, a Union foreman working for Fern. Lindenmayer encouraged me to hire more than one additional senior employee due to Fern's needs. Lindenmayer informed me that he told the Union that Fern would consider hiring two additional senior employees, bringing the number of senior employees to nine.

Hall does not state in his affidavit that the Union was informed, either through Lindenmayer or otherwise, that Fern *would in fact* hire two additional senior employees, only that Fern would *consider* this idea. Nor does Hall state that he told Lindenmayer that he had decided to hire an additional senior employee. Furthermore, even assuming that Hall had clearly communicated to Lindenmayer that he intended to hire a ninth senior employee, it is not apparent that giving notice to Lindenmayer would satisfy the terms of the CBA.

Given that the language of the CBA is ambiguous, we may turn to the past practice of the parties to determine whether or not Fern's notice to Lindenmayer would constitute "sufficient advance notice." *See Armistead*, 944 F.2d at 1293; *Perry*, 943 F.2d at 619. However, in this case, neither party has provided evidence as to how notice has been given in the past when positions opened up in the senior employee group. The Union argues that Fern was

**606**

required to notify Madison, its official representative, in order to effect notice on the Union, since Madison is the business agent for the Union. This is plausible, especially in light of the letter sent by Hall to Madison informing the Union of Fern's decision to hire Cundiff and Habenstein. This letter could represent a standard method of giving notice to the Union and suggests that Fern was aware of the fact that Madison was the key person to inform of hiring decisions made by the company.

■ Fern argues that informing Lindenmayer, an employee who held a formal position in the Union, was tantamount to informing the Union. Yet, under general principles of agency law, it is not apparent that the receipt of notice by Lindenmayer could reasonably be imputed to the Union. While knowledge of an agent is generally imputed to the principal, that rule applies only in respect to matters with which the agency is concerned or within the scope of the agency and so related to its purpose as to impose the duty of informing his principal. *See Ford Motor Credit Co. v. Weaver,* 680 F.2d 451, 457 (6th Cir.1982); *Daffron v. Smock,* 247 Ky. 98, 56 S.W.2d 712, 714 (Ky.1933); *Brown v. Physicians Mutual Ins. Co.,* 679 S.W.2d 836, 838 (Ky.App. 1984). Lindenmayer's duties as a shop foreman consisted primarily of assigning work to the other senior employees at Fern and did not require him to be involved as a representative of the Union in any of its contractual negotiations or in discussions with Fern with regard to hiring Union members. Indeed, Lindenmayer was appointed by the company and not by the Union. Therefore, the information that Fern was going to hire another senior employee was outside of the scope Lindenmayer's agency.

Fern contends that even if giving notice to Lindenmayer was not enough by itself, Hall reasonably relied on Lindenmayer's statement that he had passed on the information to the Union. *See Gratiot Community Hosp. v. NLRB,* 51 F.3d 1255, 1259 (6th Cir.1995) (holding that where "a union had actual notice of an employer's intentions at a time when there was sufficient opportunity to bargain prior to implementation of the change, the employer may not be faulted for failing to afford formal notification." (quoting *Medicenter, Mid–South Hosp.,* 221 N.L.R.B. 670, 678, 1975 WL 6475 (1975)). Yet Hall's letter to Madison, sent after making the decision to hire Habenstein, reads as if he is informing Madison for the first time that the company decided to hire a ninth senior employee. Furthermore, Madison states in his affidavit that "[t]he first notice [he] received regarding the Company's intention of hiring a ninth senior employee in 2000 was [Jeff Hall's letter] dated May 10, 2000." Fern argued strenuously at oral argument that Madison's affidavit on this point was artfully crafted. Fern suggested that Madison used the word "notice" as a term of art, and that his statement did not directly contradict Hall's averment that Lindenmayer actually told the Union of the company's plan. In addition, Fern pointed out that Madison did not revisit this issue in his supplemental affidavit, attached to the Union's motion for reconsideration. Although Lindenmayer holds the key to the question of whether the Union was notified, Lindenmayer was not deposed by either party and we are left with the subtly conflicting affidavits of Hall and Madison. Reading these facts in a light most favorable to the Union, as the non-moving party, it is not clear whether Hall gave effective notice to Lindenmayer of his intentions nor whether Lindenmayer effectively communicated any information to the Union. Finally, there is no evidence as to what constitutes the "sufficient advance notice" required by the CBA. In sum, there is a genuine issue of fact as to

whether Fern gave sufficient advance notice to the Union of its intention to hire a ninth senior employee.

### III

For the reasons given above, we reverse the district court's grant of summary judgment and remand the case for a factual determination as to whether Fern gave "sufficient advance notice" as required by the CBA.